UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MANUEL MURILLO, an individual,          NO. CIV. 2:08-1974 WBS GGH
on behalf of himself and all
others similarly situated,
                                        MEMORANDUM AND ORDER RE:
          Plaintiff,                    PRELIMINARY CERTIFICATION OF A
                                        CONDITIONAL SETTLEMENT CLASS
     v.

PACIFIC GAS & ELECTRIC
COMPANY, a California
corporation, and DOES 1
through 10, inclusive,

          Defendants.
_____/


----oo0oo----

          Plaintiff Manuel Murillo brought this matter seeking a

collective and class action suit against defendant Pacific Gas &

Electric Company ("PG&E") for alleged violations of the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219; the

California Labor Code, Cal. Lab. Code §§ 201, 203, 204, 226(a),

226.3, 226.7, 510, 512, 1194; and California's Unfair Competition

1

1   Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210.  Presently
2   before the court is plaintiff's unopposed motion for preliminary
3   approval of the settlement of his hybrid action which consists of
4   a Federal Rule of Civil Procedure 23(b)(3) class action and FLSA
5   § 216(b) collective action.
6   I.   Factual and Procedural Background
7        Plaintiff was employed by defendant as a meter reader
8   from February 5, 2006 to May 16, 2008.  As part of his
9   compensation, plaintiff received funds to purchase health care
10  and other benefits in lieu of receiving these benefits directly
11  from defendant.  These funds were known as the Hiring Hall Line
12  Benefit Premium ("Hiring Hall Premium").
13       On August 22, 2008, plaintiff filed a putative class
14  and collective action claiming that defendant engaged in unfair
15  and illegal business practices in its payment of meter readers
16  who received the Hiring Hall Premium.  (Docket No. 1.)  Plaintiff
17  amended his Complaint once as a matter of course.  (Docket No.
18  16.)  On July 24, 2009, plaintiff filed a Second Amended
19  Complaint that withdrew several previously asserted causes of
20  action and plead a federal FLSA claim as well as state claims
21  that specifically alleged that defendant (1) failed to properly
22  calculate meter readers' overtime premiums in accordance with the
23  FLSA by excluding the Hiring Hall Premium from its calculations
24  of overtime pay and (2) failed to include all required
25  information on meter readers' paychecks.  (Docket No. 26.)
26  Plaintiff filed a motion for conditional certification of a
27  collective action class pursuant to § 216(b) of the FLSA on July
28  28, 2009, but withdrew this motion one day later.  (See Docket

2

1 | Nos. 27, 28.)

2 On October 6, 2009, the parties attended a day long
3 mediation session with a neutral third-party mediator, Lester
4 Levy, Esq. of JAMS, where they agreed to settlement terms.
5 Consequently, the parties now seek preliminary approval of their
6 Class Action Settlement Agreement and Stipulation, which settles
7 both plaintiff's federal collective action under § 216(b) for
8 violation of the FLSA and the Rule 23(b)(3) class action based on
9 plaintiff's state law claims.[1]

10 II.   <u>Discussion</u>

11    A.   <u>FLSA Collective Certification</u>

12 The FLSA requires employers to pay an overtime rate of
13 one and one-half times their regular pay rate for hours worked
14 over forty hours in a week.  29 U.S.C. § 207(a).  The statute
15 provides that an aggrieved employee may bring a collective action
16 on behalf of himself and other employees "similarly situated"
17 based on an employer's failure to adequately pay overtime wages.
18 <u>Id.</u> § 216(b).  The FLSA limits participation in a collective
19 action to only those parties that "opt-in" to the suit.  <u>See</u> <u>Id.</u>
20 ("No employee shall be a party plaintiff to any such action
21 unless he gives his consent in writing to become such a party and
22 such consent is filed in the court in which such action is
23 brought"); <u>see also</u> <u>Wright v. Linkus Enterprises</u>, 259 F.R.D. 468,
24 475 (E.D. Cal. 2009) (England, J.).  To maintain a collective
25 action under the FLSA a plaintiff must demonstrate that the

26

27    [1]   Although only plaintiff brought this motion for
28 approval of the settlement agreement, defendant filed a Statement
of Non-Opposition to the motion.  (Docket No. 33.)

3

1  putative collective action members are similarly situated.  <u>Id.</u>;

2  <u>Adams v. Inter-Con Sec. Sys.</u>, 242 F.R.D. 530, 535-36 (N.D. Cal.

3  2007); <u>Leuthold v. Destination Am., Inc.</u>, 224 F.R.D. 462, 466

4  (N.D. Cal. 2004).

5        Neither the FLSA nor the Ninth Circuit have defined

6  "similarly situated." <u>Adams</u>, 242 F.R.D. at 536; <u>Leuthold</u>, 224

7  F.R.D. at 466.  A majority of courts have adopted a two-step

8  approach for determining whether a class is "similarly situated."

9  <u>See Leuthold</u>, 224 F.R.D. at 466 (compiling district court cases

10 following the two-step approach); <u>see, e.g.</u>, <u>Thiessen v. Gen.</u>

11 <u>Elec. Capital Corp.</u>, 267 F.3d 1095, 1102-03 (10th Cir. 2001);

12 <u>Hipp v. Liberty Nat. Life. Ins. Co.</u>, 252 F.3d 1208, 1219 (11th

13 Cir. 2001); <u>Mooney v. Aramco Serv. Co.</u>, 54 F.3d 1207, 1213-14

14 (5th Cir. 1995), <u>overruled on other grounds by</u> <u>Desert Palace,</u>

15 <u>Inc. v. Costa</u>, 539 U.S. 90 (2003).  Under this approach, a

16 district court first determines, based on the submitted pleadings

17 and affidavits, whether the proposed class should be notified of

18 the action.  <u>Leuthold</u>, 224 F.R.D. at 467.  At the first stage,

19 the determination of whether the putative class members will be

20 similarly situated "is made using a fairly lenient standard, and

21 typically results in 'conditional certification' of a

22 representative class." <u>Mooney</u>, 54 F.3d at 1214.  District courts

23 have held that conditional certification requires only that

24 "'plaintiffs make substantial allegations that the putative class

25 members were subject to a single illegal policy, plan or

26 decision.'" <u>Adams</u>, 242 F.R.D. at 536 (citing <u>Leuthold</u>, 224

27 F.R.D. at 468); <u>see also</u> <u>Thiessen</u>, 267 F.3d at 1102.

28        The second-step usually occurs after discovery is

4

complete, at which time the defendants may move to decertify the class. Leuthold, 224 F.R.D. at 467.  In this step, the court makes a factual determination about whether the plaintiffs are similarly situated by weighing such factors as "(1) the disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which appeared to be individual to each plaintiff, and (3) fairness and procedural considerations." Misra v. Decision One Mortg. Co., No. SA CV 07-994 DOC (Rcx), --- F. Supp. 2d ----, 2008 WL 7242774, at *3 (C.D. Cal. Jun. 23, 2008) (quotation marks, citations omitted). If the district court determines that the plaintiffs are not similarly situated, the court may decertify the class and dismiss the opt-in plaintiffs' action without prejudice. Leuthold, 224 F.R.D. at 467.  Even when the parties settle, the court "must make some final class certification finding before approving a collective action settlement." Carter v. Anderson Merchandisers, LP, Nos. EDCV 08-00025-VAP (OPx), EDCV 09-0216-VAP (Opx), 2010 WL 144067, at *3 (C.D. Cal. Jan. 7, 2010) (citations omitted).

1.   First-Step Analysis

Plaintiff has made "substantial allegations that the putative class members were subject to a single illegal policy, plan or decision." Leuthold, 224 F.R.D. at 468.  Specifically, plaintiff's pleadings and affidavits indicate that defendant allegedly uniformly miscalculated the overtime pay for all meter readers who received the Hiring Hall Premium by excluding the premium funds from the putative class members' base pay rates. Plaintiff defines the potential collective action class as "all

1  individuals employed as Hiring Hall Meter Readers[2] by PG&E
2  between August 18, 2006 and December 31, 2009." (Hutchins Decl.
3  Ex. 1-B.(Proposed Notice of Collective Class, Docket No. 30).)
4  Defendant does not deny that it did not include the funds
5  putative class members received from the Hiring Hall Premium when
6  calculating meter readers' base pay for overtime purposes.
7  Instead, defendant contends that the Hiring Hall Premium was
8  properly excluded from the base rate of pay because it is a
9  health care benefit under 29 U.S.C. §207(e)(4), which may
10 properly be excluded from overtime calculations under the FLSA.
11 Accordingly, both sides are in agreement that defendant engaged
12 in a uniform  policy toward all class members that may have been
13 illegal.  Plaintiff's collective action under the FLSA is
14 therefore appropriate for conditional certification.

15          2.   Propriety of Hybrid FLSA Collective Action and
16               Rule 23 Class Action

17          While plaintiff has brought his federal claim as a
18 collective action, he brings his state law claims as a Rule 23
19 class action suit.  Courts are split on whether a plaintiff may
20 simultaneously bring a FLSA collective action and a state law-
21 based Rule 23 class action.  A number of courts have held that
22 the FLSA's opt-in format does not preclude a plaintiff from also
23 bringing state law claims bound by Rule 23's opt-out procedure
24 because of the FLSA's savings clause, which states that nothing
25 in the act "shall excuse noncompliance with any Federal or State
26 law or municipal ordinance establishing [stricter labor laws]."

27 ─────────────
28          [2]     "Hiring Hall Meter Readers" are those meter readers
   employed by defendant who received the Hiring Hall Premium.

Harris v. Investor's Bus. Daily, Inc., 41 Cal. App. 4th 28, 32 (2006) (quoting 29 U.S.C. § 218(a)); see, e.g., Lindsay v. Gov't Employees Ins. Co., 448 F.3d 416, 424-25 (D.C. Cir. 2006) (holding that district court can exercise supplemental jurisdiction over similar Rule 23 opt-out class action); De Asencia v. Tyson Foods, 342 F.3d 301, 309-10 (3d Cir. 2003) (same); Avery v. City of Talladega, 24 F.3d 1337, 1348 (11th Cir. 1994) (holding that state law claim overlapping with FLSA claim is not preempted by FLSA). Many district courts in the Ninth Circuit have allowed an opt-in FLSA collective action and opt-out Rule 23 class action to proceed simultaneously in the same suit. See, e.g., Wright, 259 F.R.D. at 475; Ellison v. Autozone Inc., No. C06-07522 MJJ, 2007 WL 2701923 (N.D. Cal. Sept. 13, 2007); Baas v. Dollar Tree Stores, Inc., No. C 07-03108 JSW, 2007 WL 2462150 (N.D. Cal. Aug. 29, 2007); Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474 (E.D. Cal. 2006); Breeden v. Benchmark Lending Group, Inc., 229 F.R.D. 623 (N.D. Cal. 2005); Tomlinson v. Indymac Bank, F.S.B., 359 F. Supp. 2d 898 (C.D. Cal. 2005).

However, a number of courts have refused to allow an FLSA collective action and a Rule 23 state law class action to proceed in the same case. These courts have expressed three major objections to hybrid FLSA/Rule 23 actions. First, several courts have argued that allowing an FLSA collective action and Rule 23 class action together would undermine Congress's intent to limit FLSA claims to opt-in actions by binding class members who choose not to opt-in to the FLSA action but do not opt-out of the Rule 23 class to the suit's result on the state law claims.

1    See, e.g., Edwards v. City of Long Beach, 467 F. Supp. 2d 986,

2    993 (C.D. Cal. 2006); Leuthold, 224 F.R.D. at 470 ("[T]he policy

3    behind requiring FLSA plaintiffs to opt-in to the class would

4    largely be thwarted if a plaintiff were permitted to back door

5    the shoehorning in of unnamed parties through the vehicle of

6    calling upon similar state statutes that lack such an opt-in

7    requirement.") (citations omitted).

8         Second, a few courts have expressed concerns that

9    having opt-in and opt-out claims in the same case would be

10   confusing for potential plaintiffs. See Edwards, 467 F. Supp. 2d

11   at 992; McClain v. Leona's Pizzeria, Inc., 222 F.R.D. 574, 577

12   (N.D. Ill. 2004).  Third, a number of courts have refused to

13   certify a Rule 23 class action based solely on state claims with

14   an FLSA collective action because of jurisdictional concerns.

15   See Edwards, 467 F. Supp. 2d at 992; Leuthold, 224 F.R.D. at 470.

16   Specifically, these courts argue that in a case where federal

17   jurisdiction is solely based on an FLSA claim, if "only a few

18   plaintiffs opt-in to the FLSA class after the court were to

19   certify a Rule 23 state law class, the court might be faced with

20   the somewhat peculiar situation of a large number of plaintiffs

21   in the state law class who have chosen not to prosecute their

22   federal claims." Leuthold, 224 F.R.D. at 470.  This would then

23   raise concerns about whether a court should retain supplemental

24   jurisdiction over the Rule 23 state claims, since they would

25   substantially predominate over the FLSA collective action.  Id.

26   (citing 28 U.S.C. § 1367(a)).

27        Despite these concerns, the court is unpersuaded that a

28   hybrid action is inappropriate at this preliminary stage.  Had

1  Congress believed that allowing a state opt-out action to go
2  forward simultaneously with an opt-in FLSA action would undermine
3  the statute, it would not have expressly indicated that the FLSA
4  does not preempt state labor laws.  <u>See</u> <u>Thorpe v. Abbott</u>
5  <u>Laboratories</u>, 534 F. Supp. 2d 1120, 1124 (N.D. Cal. 2008);
6  <u>Lindsay</u>, 251 F.R.D. at 57.  After reviewing the potential opt-in
7  and opt-out notices provided by the parties, there is nothing
8  particularly confusing about the potential class members'
9  options.  Instead, the notices clearly explain the consequences
10  of choosing to opt-in to the FLSA action, opt-out, or do nothing.
11  (<u>See</u> Hutchins Decl. Ex. 1-B.)  There are also no jurisdictional
12  concerns in this case, as any plaintiff that opts in to the FLSA
13  action will also opt-in to the Rule 23 class under the agreement.
14  <u>See</u> <u>Wright</u>, 259 F.R.D at 475 (certifying a hybrid action where
15  opting in to the FLSA claim also opted plaintiffs into the Rule
16  23 class action).  While it is possible that many potential
17  class members could do nothing and be bound solely by the Rule 23
18  action, leaving a larger Rule 23 class than FLSA class, the court
19  can review these jurisdictional concerns at the fairness and
20  final certification hearing.

21          Rather than being burdensome, the court finds that
22  "certification (1) will prevent duplicative, wasteful and
23  inefficient litigation . . . (2) will eliminate the risk that the
24  question of law common to the class will be decided differently .
25  . . and (3) will not create any difficult case management
26  issues."  <u>Lindsay</u>, 251 F.R.D. at 57.  Accordingly, the court will
27  conditionally certify plaintiff's FLSA collective action.

28          B.   <u>Rule 23 Class Certification</u>

9

1    The Ninth Circuit has declared that a strong judicial
2 policy favors settlement of class actions.  <u>Class Plaintiffs v.</u>
3 <u>City of Seattle</u>, 955 F.2d 1268, 1276 (9th Cir. 1992).
4 Nevertheless, where, as here, "parties reach a settlement
5 agreement prior to class certification, courts must peruse the
6 proposed compromise to ratify both [1] the propriety of the
7 certification and [2] the fairness of the settlement."  <u>Staton v.</u>
8 <u>Boeing Co.</u>, 327 F.3d 938, 952 (9th Cir. 2003).
9    In conducting the first part of its inquiry, the court
10 "must pay 'undiluted, even heightened, attention' to class
11 certification requirements" because, unlike in a fully litigated
12 class action suit, the court will not have future opportunities
13 "to adjust the class, informed by the proceedings as they
14 unfold."  <u>Amchem Prods. Inc. v. Windsor</u>, 521 U.S. 591, 620
15 (1997); <u>accord</u> <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th
16 Cir. 1998).  The parties cannot "agree to certify a class that
17 clearly leaves any one requirement unfulfilled," and consequently
18 the court cannot blindly rely on the fact that the parties have
19 stipulated that a class exists for purposes of settlement.  <u>Berry</u>
20 <u>v. Baca</u>, No. 01-02069, 2005 WL 1030248, at *7 (C.D. Cal. May 2,
21 2005); <u>see also</u> <u>Amchem</u>, 521 U.S. at 622 (observing that nowhere
22 does Rule 23 say that certification is proper simply because the
23 settlement appears fair).  In conducting the second part of its
24 inquiry, the "court must carefully consider 'whether a proposed
25 settlement is fundamentally fair, adequate, and reasonable,'
26 recognizing that '[i]t is the settlement taken as a whole, rather
27 than the individual component parts, that must be examined for
28 overall fairness . . . .'"  <u>Staton</u>, 327 F.3d at 952 (quoting

Hanlon, 150 F.3d at 1026); see also Fed. R. Civ. P. 23(e) (outlining class action settlement procedures).

Procedurally, the approval of a class action settlement takes place in two stages.  In the first stage of the approval process, "'the court preliminarily approve[s] the Settlement pending a fairness hearing, temporarily certifie[s] the Class . . . , and authorize[s] notice to be given to the Class.'"  West v. Circle K Stores, Inc., No. 04-0438, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006) (quoting In re Phenylpropanolamine (PPA) Prods. Liab. Litig., 227 F.R.D. 553, 556 (W.D. Wash. 2004)).  In this Order, therefore, the court will only "determine[] whether a proposed class action settlement deserves preliminary approval" and lay the ground work for a future fairness hearing.  Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004).  At the fairness hearing, after notice is given to putative class members, the court will entertain any of their objections to (1) the treatment of this litigation as a class action and/or (2) the terms of the settlement.  See Diaz v. Trust Territory of Pac. Islands, 876 F.2d 1401, 1408 (9th Cir. 1989) (holding that prior to approving the dismissal or compromise of claims containing class allegations, district courts must, pursuant to Rule 23(e), hold a hearing to "inquire into the terms and circumstances of any dismissal or compromise to ensure that it is not collusive or prejudicial").  Following the fairness hearing, the court will make a final determination as to whether the parties should be allowed to settle the class action pursuant to the terms agreed upon.  DIRECTV, Inc., 221 F.R.D. at 525.

A class action will be certified only if it meets the

11

four prerequisites identified in Federal Rule of Civil Procedure 23(a) and additionally fits within one of the three subdivisions of Rule 23(b).  Although a district court has discretion in determining whether the moving party has satisfied each Rule 23 requirement, Califano v. Yamasaki, 442 U.S. 682, 701 (1979); Montgomery v. Rumsfeld, 572 F.2d 250, 255 (9th Cir. 1978), the court must conduct a rigorous inquiry before certifying a class. Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 161 (1982); E. Tex. Motor Freight Sys. v. Rodriguez, 431 U.S. 395, 403-05 (1977).

   1. Rule 23(a)

   Rule 23(a) restricts class actions to cases where:

> (1) the class is so numerous that joinder of all  members
> is impracticable; (2) there are questions  of law or fact
> common to the class; (3) the claims  or defenses of the
> representative parties are typical of  the claims  or
> defenses of the class; and (4) the representative parties
> will fairly and  adequately protect the interests of the
> class.

Fed. R. Civ. P. 23(a).  These requirements are more commonly referred to as numerosity, commonality, typicality, and adequacy of representation, respectively.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

   a. Numerosity

   While courts have not established a precise threshold for determining numerosity, Gen. Tel. Co. v. E.E.O.C., 446 U.S. 318, 330 (1980), a class consisting of one thousand members "clearly satisfies the numerosity requirement."  Sullivan v. Chase Inv. Servs., Inc., 79 F.R.D. 246, 257 (N.D. Cal. 1978). Plaintiff proposes a class that consists of "all individuals employed as Hiring Hall Meter Readers by PG&E between August 18,

2006 and December 31, 2009." (Hutchins Decl. Ex. 1-B (Proposed
Notice of Collective Class, Docket No. 30).)  As evidence of the
numerosity of the proposed class, plaintiff offers a Stipulated
Class List, which is a list of the employee identification
numbers of all Hiring Hall Meter Readers employed by defendant
from August 18, 2006 to December 31, 2009. (Id. Ex. 1-A
(Stipulated Class List).)  According to this list, the class at
issue would be comprised of at least 1,115 past and present PG&E
employees.  Even if the actual class size falls below plaintiff's
1,115 member estimate, it is reasonable to assume that its size
will surpass previous Ninth Circuit thresholds for numerosity.[3]
See, e.g., Jordan v. L.A. County, 669 F.2d 1311, 1319 (9th Cir.
1982) (finding class sizes of thirty-nine, sixty-four, and
seventy-one sufficient to satisfy the numerosity requirement),
vacated on other grounds, 459 U.S. 810 (1982); Gay v. Waiters' &
Dairy Lunchmen's Union, 549 F.2d 1330 (9th Cir. 1977) (finding
numerosity requirement to be met with approximately 110 potential
class members); Leyva v. Buley, 125 F.R.D. 512, 515 (E.D. Wash.
1989) (allowing certification of a fifty-member class).
Accordingly, plaintiff has satisfied the numerosity requirement.

             b.   Commonality

        Rule 23(a) also requires that "questions of law or fact
[be] common to the class."  Fed. R. Civ. P. 23(a)(2).  Because

---

[3]    In her declaration, plaintiff's counsel indicates her
belief that the class will be of "approximately 750 persons."
(Hutchins Decl. ¶ 9.)  While this number is inconsistent with the
evidence presented to the court and plaintiff's Memorandum in
Support of his motion, the lower figure would still be
sufficiently numerous such that joinder would be impracticable.
See, e.g., Jordan, 669 F.2d at 1319; Gay, 549 F.2d at 1332-33;
Leyva, 125 F.R.D. at 515.

"[t]he Ninth Circuit construes commonality liberally," "it is not necessary that all questions of law and fact be common." West, 2006 WL 1652598, at *3 (citing Hanlon, 150 F.3d at 1019).  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon, 150 F.3d at 1019.

Plaintiff identifies several common issues legal issues within the putative class that purportedly would have been examined had this case gone to trial, including whether: (1) defendant failed to pay a proper overtime rate in violation of the FLSA, (2) defendant was entitled to an offset for overtime paid when class members worked under forty hours a week for the entire period of relevance to the lawsuit or only on a per-pay period basis, (3) class members would be entitled to liquidated damages, and (4) defendant failed to include all information required by the California Labor Code in class members' paychecks.  (Hutchins Decl. ¶ 9; Am. Mot. Preliminary Certification of Conditional Settlement Class, Docket No. 32, 3:16-28.)

The court agrees that the potential claims of class members would arise from a set of circumstances similar to that of plaintiff, namely employment as a meter reader by defendant and receipt of the Hiring Hall Benefit between August 18, 2006 and December 31, 2009.  See Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1177-78 (9th Cir. 2007) (stating that the standard in Rule 23(a)(2) is "qualitative rather than quantitative--one significant issue common to the class may be sufficient to

14

1  warrant certification"). All class members were subject to the
2  same method of overtime calculation, had similar pay structures,
3  and had substantially similar job duties. Because it therefore
4  appears that the same alleged conduct of defendant would "form[]
5  the basis of each of the plaintiff's claims," <u>Acosta v. Equifax</u>
6  <u>Info. Servs., L.L.C.</u>, 243 F.R.D. 377, 384 (C.D. Cal. 2007), class
7  relief based on commonality is appropriate. <u>See</u> <u>Califano v.</u>
8  <u>Yamasaki</u>, 442 U.S. 682, 701 (1979) (holding that commonality
9  issues of the class "turn on questions of law applicable in the
10 same manner to each member of the class").

11                    c.   <u>Typicality</u>

12           Rule 23(a) further requires that the "claims or
13 defenses of the representative parties [be] typical of the claims
14 or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality
15 requires that named plaintiffs have claims "reasonably
16 coextensive with those of absent class members," but their claims
17 do not have to be "substantially identical." <u>Hanlon</u>, 150 F.3d at
18 1020. The test for typicality "'is whether other members have
19 the same or similar injury, whether the action is based on
20 conduct which is not unique to the named plaintiffs, and whether
21 other class members have been injured by the same course of
22 conduct.'" <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 508 (9th
23 Cir. 1992) (citation omitted).

24           In this case, all putative class members suffered
25 similar injuries when their overtime compensation was calculated
26 with the Hiring Hall Premium excluded from their base pay. As a
27 result, class members allegedly received lower amounts of
28 overtime compensation than allowed under the FLSA. The source of

this injury arises from defendant's allegedly uniform method of calculating overtime pay for meter readers with the Hiring Hall Premium.  While the named plaintiff may have worked more or less overtime than other class members, such factual differences do not defeat typicality.  See Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1185 (9th Cir. 2007) ("Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality.").  There is no indication of uniqueness as to either defendant's conduct toward the named plaintiff or the injury suffered as a result of that conduct that might cause the named plaintiff to become "preoccupied with defenses unique to it."  Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990).  This settlement agreement, therefore, does not appear to be the result of any exceptional circumstances or atypical claims proffered by plaintiff.

                    d.   Adequacy of Representation

          Finally, Rule 23(a) requires "representative parties [who] will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To resolve the question of legal adequacy, the court must answer two questions: (1) do the named plaintiff and his counsel have any conflicts of interest with other class members and (2) has the named plaintiff and her counsel vigorously prosecuted the action on behalf of the class?  Hanlon, 150 F.3d at 1020.  This adequacy inquiry considers a number of factors, including "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the

1  unlikelihood that the suit is collusive." <u>Brown v. Ticor Title</u>

2  <u>Ins.</u>, 982 F.2d 386, 390 (9th Cir. 1992).

3          The examination of potential conflicts of interest in

4  settlement agreements "has long been an important prerequisite to

5  class certification.  That inquiry is especially critical when []

6  a class settlement is tendered along with a motion for class

7  certification." <u>Hanlon</u>, 150 F.3d at 1020.  Here, the interests

8  of plaintiff and his course of legal redress are not ostensibly

9  at variance with those of putative class members.  Although the

10 definition of the settlement class does encompass a large number

11 of members, the class itself is narrowly defined: Hiring Hall

12 meter readers who worked for defendant between August 18, 2006

13 and December 31, 2009.  This definition effectively minimizes the

14 probability that the certification procedure will overlook

15 legitimate yet dissimilar claims of class members; rather, the

16 potential for conflicting interests will remain low while the

17 likelihood of shared interests remains high.  <u>See</u> <u>Amchem</u>

18 <u>Products, Inc. v. Windsor</u>, 521 U.S. 591, 625-26 (1997) ("[A]

19 class representative must be part of the class and possess the

20 same interest and suffer the same injury as the class members.")

21 (internal citation and quotations omitted).

22         The second prong of the adequacy inquiry examines the

23 vigor with which the named plaintiff and her counsel have pursued

24 the common claims.  "Although there are no fixed standards by

25 which 'vigor' can be assayed, considerations include competency

26 of counsel and, in the context of a settlement-only class, an

27 assessment of the rationale for not pursuing further litigation."

28 <u>Hanlon</u>, 150 F.3d at 1021.  Plaintiff's counsel's competency with

17

1   respect to class action litigation is significant.  Specifically,
2   a thorough declaration submitted to the court lists several class
3   action proceedings in both state and federal court in which
4   plaintiff's counsel served as either lead or co-counsel.  (<u>See</u>
5   Hutchins Decl. ¶¶ 4-5.)  Moreover, plaintiff's counsel has
6   personally handled over 200 wage and hour cases.  (<u>Id.</u>)  Given
7   this experience, the court can safely assume that plaintiff's
8   counsel has vigorously sought to maximize the return on its labor
9   and to vindicate the injuries of the entire class.  Therefore,
10  the court holds that the named plaintiff is an adequate class
11  representative.

12          2.   <u>Rule 23(b)</u>

13          An action that meets all the prerequisites of Rule
14  23(a) may be maintained as a class action only if it also meets
15  the requirements of one of the three subdivisions of Rule 23(b).
16  <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 163 (1974).  In this
17  case, plaintiff seeks certification under Rule 23(b)(3).  A class
18  action may be maintained under Rule 23(b)(3) if (1) "the court
19  finds that questions of law or fact common to class members
20  predominate over any questions affecting only individual
21  members," and (2) "that a class action is superior to other
22  available methods for fairly and efficiently adjudicating the
23  controversy."  Fed. R. Civ. P. 23(b)(3).

24          a.   <u>Predominance</u>

25          Because Rule 23(a)(3) already considers commonality,
26  the focus of the Rule 23(b)(3) predominance inquiry is on the
27  balance between individual and common issues.  <u>Hanlon</u>, 150 F.3d
28  at 1022; <u>see also</u> <u>Amchem</u>, 521 U.S. at 623 ("The Rule 23(b)(3)

predominance inquiry tests whether proposed classes are
sufficiently cohesive to warrant adjudication by
representation"). The plaintiff's motion sufficiently
demonstrates that "[a] common nucleus of facts and potential
legal remedies dominates this litigation." Hanlon, 150 F.3d at
1022. Where the aforementioned common questions, see supra
II.B.1.b., "present a significant aspect of the case and . . .
can be resolved for all members of the class in a single
adjudication, there is clear justification for handling the
dispute on a representative rather than on an individual basis."
Id. As this case turns on the legality of a common method for
calculation of overtime and uniform information on the putative
class members' payment stubs, it is clear that common legal
questions dominate this litigation such that class-wide
adjudication is appropriate.

The existence of individualized issues in this action,
if any, does not preclude a finding of predominance. See, e.g.,
Moreno v. AutoZone, Inc., No. 05-4432, 2008 WL 2271599, at *8
(N.D. Cal. May 30, 2008) (predominance inquiry satisfied even
though court would have to "grapple with individual issues, such
as whether a late paycheck reflects earned or unearned wages");
Kesler v. Ikea U.S., Inc., No. 07-0568, 2008 WL 413268, at *7
(C.D. Cal. Feb. 4, 2008) (predominance inquiry satisfied even
though "each putative class member's right to recovery depends on
the fact that he or she is a 'consumer' for the purposes of the
FCRA"). While putative class members will be entitled to
individualized damages depending on the amount of overtime each
worked, "individual issues regarding damages will not, by

1  themselves, defeat certification under Rule 23(b)(3)."  <u>West v.</u>
2  <u>Circle K Stores, Inc.</u>, No. 04-0438, 2006 WL 1652598, at *7-8
3  (E.D. Cal. June 13, 2006) (citing <u>Blackie v. Barrack</u>, 524 F.2d
4  891, 905-09 (9th Cir. 1975)); <u>see also</u> <u>id.</u> (finding predominance
5  inquiry satisfied despite the fact that "individual differences
6  in accrual caps, accrual rates, and amount of vacation time
7  accrued" would result in individualized damages).

8        To the extent that any further individual issues may
9  exist, there is no indication that such issues would be anything
10 more than "local variants of a generally homogenous collection of
11 causes" that derive from the named plaintiff's allegations.
12 <u>Hanlon</u>, 150 F.3d at 1022.  Such idiosyncratic differences,
13 therefore, "are not sufficiently substantive to predominate over
14 the shared claims."  <u>Id.</u> at 1022-23.

15                    b.   <u>Superiority</u>
16        In addition to the predominance requirement, Rule
17 23(b)(3) provides a non-exhaustive list of matters pertinent to
18 the court's determination that the class action device is
19 superior to other methods of adjudication.  Fed. R. Civ. P.
20 23(b)(3)(A)-(D).  These matters include:

21       (A) the interest of members of the class in individually
          controlling the prosecution or defense of separate
22       actions;
         (B) the extent and nature of any litigation concerning
23       the controversy already commenced by or against members
         of the class;
24       (C) the desirability or undesirability of concentrating
         the litigation of the claims in the particular forum; and
25       (D) the difficulties likely to be encountered in the
         management of a class action.
26
27 <u>Id.</u>  Some of these factors, namely (D) and perhaps (C), are
28 irrelevant if the parties have agreed to a pre-certification

settlement.  <u>Amchem</u>, 521 U.S. at 620.  Additionally, the court is unaware of any concurrent litigation regarding the issues of the instant case.  In the absence of competing lawsuits, it is also unlikely that other individuals have an interest in controlling the prosecution of this action or other actions, although objectors at the fairness hearing may reveal otherwise.  As it stands today, however, the class action device appears to be the superior method for adjudicating this controversy.

                    3.    <u>Rule 23(e): Fairness, Adequacy, and Reasonableness</u>
                          <u>of Proposed Settlement</u>

        Having determined that class treatment appears to be warranted,[4] the court must now address whether the terms of the parties' settlement appear fair, adequate, and reasonable.  In conducting this analysis, the court must balance several factors including

            the strength of the plaintiffs' case; the risk, expense,
            complexity, and likely duration of further litigation;

_____

        [4]    The court notes that it has conducted a full analysis of the class certification question at this stage to determine if all of the effort that will necessarily go into preparing for the fairness hearing is appropriate.  This initial determination that class certification is warranted is not, however, binding on the court, and the parties are discouraged from changing their positions on the terms of the settlement in reliance on this Order.  The court is not required to make a final determination that class treatment is appropriate until the final settlement approval, and it therefore does not herein make that final determination.  <u>See</u> <u>In re Gen. Motors Corp. Pick-Up Truck Fuel</u> <u>Tank Prods. Liab. Litig.</u>, 55 F.3d 768, 797 (3d Cir. 1995) (holding that while the trustworthiness of the negotiation process used to approve the settlement can be relied on to justify provisional certification of a settlement class, "final settlement approval depends on the finding that the class met all the requisites of Rule 23").  Moreover, because the analysis of the Rule 23(b) requirements depends in part on the terms of the settlement and the superiority component, the parties cannot assume that the court's instant class certification analysis would necessarily be the same should circumstances change.

1  the risk of maintaining class action status throughout
   the trial; the amount offered in settlement; the extent
2  of discovery completed and the stage of the proceedings;
   the experience and views of counsel; the presence of a
3  governmental participant; and the reaction of the class
   members to the proposed settlement.
4

5  Hanlon, 150 F.3d at 1026; but see Molski v. Gleich, 318 F.3d 937,

6  953-54 (9th Cir. 2003) (noting that a district court need only

7  consider some of these factors--namely those designed to protect

8  absentees).  Given that some of these factors cannot be fully

9  assessed until the court conducts its fairness hearing, "a full

10 fairness analysis is unnecessary at this stage . . . ."  West,

11 2006 WL 1652598, at *9 (citation omitted).  The court, therefore,

12 will simply conduct a cursory review of the terms of the parties'

13 settlement for the purpose of resolving any glaring deficiencies

14 before ordering the parties to send the proposal to class

15 members.

16              a.   Terms of the Settlement Agreement

17         The key terms of the settlement agreement are as

18 follows:

19    (1) **The Settlement Class**: Class members include all
      meter readers employed by defendant who received the
20    Hiring Hall Premium between August 18, 2006 and
      December 31, 2009.  (Hutchins Decl. ¶ 9.)
21

22    (2) **Notice:** Defendant will send a class notice, Consent
      to Join/Opt-In Form, and Opt-Out Form to each
      individual in the class within twenty-one days after
23    the entry of the order conditionally approving the
      settlement.  If any notice is returned as undeliverable
24    within twenty-three days of the initial mailing
      defendant shall attempt to skip trace those class
25    members and send a second mailing within thirty-three
      days of the initial mailing.  (Settlement Agreement ¶
26    62.)

27    (3) **Opt-In Procedure:** To opt-in to the settlement a
      class member must submit and sign an Opt-In Form and
28    return the form so that it is postmarked on or before

                                22

thirty-three days after the initial mailing, or if in the second mailing, thirty-three days after the second mailing. (Id. ¶ 63.)  Sending an Opt-In Form will bind the class member to both the collective action and Rule 23 class action.  (Id. ¶ 64(c).)

(4) **Opt-Out Procedure:** To opt-out of the settlement a class member must submit and sign an Opt-Out Form and return the form so that it is postmarked on or before thirty-three days after the initial mailing, or if in the second mailing, thirty-three days after the second mailing. (Id. ¶ 64.)  Sending in both an Opt-In and Opt-Out form will deem the class member to be opted in to the Rule 23 and FLSA collective cation and the Opt-Out form will not have any legal effect.  (Id. ¶ 64(c).)  Failure to send in either an Opt-In or Opt-Out form by the opt-in and opt-out deadlines will bind the class member to the settlement of the Rule 23 state law claims, but will not preclude the class member from pursuing future FLSA claims against defendant.  (Id. ¶ 64(b).)

(5) **Objections to Settlement:** Any individual class member may object to the settlement so long as the objection is filed with the Clerk of the Court and served on all counsel by the close of the opt-in/opt-out period.  Otherwise, the objection shall be deemed waived.  (Id. ¶ 65.)

(6) **Settlement Amount:** In total the settlement amount paid to class members will be no greater than $450,000 and no less than $200,000.  (Id. ¶ 60.)  The total amount paid out will depend upon the number of class members that opt in and the amount each is due under the settlement's distribution method.  (Id.)

(7) **Attorney's Fees and Enhancement Award:** Plaintiff and class counsel will request no more than $150,000 in attorney's fees, costs, and an enhancement award for the named plaintiff.  (Id. ¶ 59.)  Defendant has agreed not to oppose this request.  (Id.)

(8) **Settlement Distribution:** Settlement funds will be distributed on an individualized basis using a formula created by the parties.  The parties will calculate the amount of FLSA overtime payments arguably due to each individual in the class.  (Id. ¶ 60.)  The parties will then subtract the "extra compensation" offset to which defendant is entitled within each pay period.[5]  (Id.)

---

[5]    Under the FLSA, if an employer pays an overtime rate for hours worked below forty in a week, the employer may subtract such non-mandatory "extra compensation" from the overtime amount it otherwise owes employees.  See 29 U.S.C. § 207(e)(5-7).

This number will then be multiplied by 1.5, which represents the addition of fifty percent of the maximum allowed liquid damages available under the FLSA. (<u>Id.</u>) The final amount owed to each class member will then be determined in one of two ways.  If the total number owed to all class members is over $450,000, the amount to each member will be determined by multiplying the total amount owed to all plaintiffs by a settlement discount percentage, which will be the percentage that makes the total amount of the settlement equal to $450,000.  (<u>Id.</u>)  In the event that the total number owed to each class member is less than $200,000, defendant will increase the amount paid to each class member on a pro-rata basis such that the total settlement amount is equal to $200,000.  (<u>Id.</u> ¶ 60(c).)

(9) **Release:** Class members will agree to release "any and all charges, claims causes of action, lawsuits, demands, complaints, liabilities, obligations, penalties, fines, promises, agreements, controversies, damages, rights, offsets, liens, attorneys' fees, costs, expenses, losses, debts, interest, penalties, and fines of any kind, . . . for any relief whatsoever, including monetary, injunctive, or declaratory relief, whether direct or indirect, whether under federal law or law of any state, whether contingent or vested, which the Named Plaintiff or any Class Member had, now has, or may have in the future against Released Parties or any of them for any acts occurring on or before December 32, 2009 that were asserted in this Action or that are based upon, arise out of, or relate to the facts of this Action." (<u>Id.</u> ¶ 30(a).)

b.   <u>Preliminary Determination of Adequacy</u>

At this preliminary approval stage, the court need only "determine whether the proposed settlement is within the range of possible approval." <u>Gautreaux v. Pierce</u>, 690 F.2d 616, 621 n. 3 (7th Cir. 1982) (quotation marks omitted).  The court is really only concerned with "whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys. . . ." <u>West</u>, 2006 WL 1652598, at *11 (citation omitted).

The Ninth Circuit acknowledges that "assessing the

24

1  fairness, adequacy and reasonableness of the substantive terms of
2  a settlement agreement can be challenging." <u>Staton v. Boeing</u>
3  <u>Co.</u>, 327 F.3d 938, 959 (9th Cir. 2003); <u>see also</u> <u>id.</u> (recognizing
4  the danger that class settlements could "result in a decree in
5  which 'the rights of [class members] . . . may not [be] given due
6  regard by negotiating parties'"). The court is assisted in its
7  inquiry where, as here, "the stipulation and settlement appear to
8  be, for the most part, the result of vigorous, arms-length
9  bargaining." <u>West</u>, 2006 WL 1652598, at *11.

10         Counsel for both sides seem to have been diligent in
11  pursuit of settlement. The parties employed a mediator, Lester
12  Levy, to assist in the negotiation of their settlement agreement
13  and have for the most part settled on the terms suggested in
14  mediation based on the strengths and weaknesses of plaintiffs'
15  case. <u>See</u> <u>Glass v. UBS Fin. Servs., Inc.</u>, No. 06-4068, 2007 WL
16  221862, at *5 (N.D. Cal. Jan. 26, 2007) ("The settlement was
17  negotiated and approved by experienced counsel on both sides of
18  the litigation, with the assistance of a well-respected mediator
19  with substantial experience in employment litigation[, and] this
20  factor supports approval of the settlement.").

21         Additionally, the proposed notice of collective and
22  class settlement provided by the plaintiff clearly explains what
23  the putative class members options are and therefore is adequate.
24  (Hutchins Decl. Ex. 1-B); <u>see</u> Fed. R. Civ. P. 23(c)(2)(B)
25  (requiring only "the best notice that is practicable under the
26  circumstances" "[f]or any class certified under Rule 23(b)(3)");
27  <u>Churchill Vill., L.L.C. v. Gen. Elec.</u>, 361 F.3d 566, 575 (9th
28  Cir. 2004) ("Notice is satisfactory if it 'generally describes

the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" (quoting <u>Mendoza v. Tucson Sch. Dist. No. 1</u>, 623 F.2d 1338, 1352 (9th Cir. 1980))).

The terms of the settlement provide for a fair amount of recovery for the class members, with individualized calculations based on the amount of overtime worked.  Plaintiff faced a significant amount of uncertainty if he were to go forward with this litigation due to the disputed nature of the legal issues in this case, namely whether the Hiring Hall Premium could be excluded from overtime calculations as a health benefit and whether defendant was entitled to substantial offsets for any inadequate overtime pay.  These circumstances and attendant risks favor settlement.  <u>Hanlon</u>, 150 F.3d at 1026.

The only aspect of the settlement that gives this court pause is the amount of attorneys fees, costs, and enhancement award that may be sought by plaintiff and class counsel.  In order for a settlement to be fair and adequate, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." <u>Staton</u>, 327 F.3d at 963.  Under the terms of the settlement, plaintiff will request attorneys' fees, costs, and an enhancement of no more than a total of $150,000.  The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." <u>Hanlon</u>, 150 F.3d at 1029.

While the amount of fees the plaintiff will request and the total settlement amount is unknown until the size of the class is determined, there is a potential for plaintiff to

26

request an amount of fees that is disproportionate to the amount
of work done on the case and the total amount paid to the
settlement class.  The court will preliminarily approve the
settlement agreement because the amount is yet to be determined
and could be less than 25 percent of the common fund.  <u>See</u> <u>West</u>,
2006 WL 1652598, at *11 fn9.  However, plaintiff is cautioned
that the attorneys' fees and enhancement award request should be
reasonable in light of the circumstances of the case and
demonstrate the circumstances necessitating the fee award.  In
the event plaintiff's request is unreasonable or disproportionate
in light of the common fund, the court would then be forced to
deny final approval of this settlement.  <u>See</u> <u>Vizcaino v.</u>
<u>Microsoft Corp.</u>, 290 F.3d 1043, 1047 (9th Cir. 2002); <u>Alberto v.</u>
<u>GMRI, Inc.</u>, 252 F.R.D. 652, 667-68 (E.D. Cal. 2008).

IT IS THEREFORE ORDERED that plaintiff's motion for
preliminary certification of a conditional settlement class be,
and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that:

(1) the following collective action and Rule 23 class
be provisionally certified for the purpose of settlement in
accordance with the terms of the stipulation: all Hiring Hall
Meter Readers employed by PG&E between August 18, 2006 to
December 31, 2009;

(2) if the stipulation does not receive the court's
final approval, should final approval be reversed on appeal, or
should the stipulation otherwise fail to become effective for any
reason (including any party's exercise of a right to terminate
under the stipulation), the court's preliminary grant of

27

certification of the class shall be vacated and become null and void without further action or order of the court;

(3) the stipulation and the settlement provided therein are preliminarily approved as fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23, subject to final consideration at the fairness hearing provided for below;

(4) for purposes of the stipulation and carrying out the terms of the settlement only:

a. plaintiff Manuel Murillo is appointed as the representative of the collective action and Rule 23 class;

b. the Law Offices of Michael Tracy is appointed as Class Counsel for the class and shall be responsible for the acts and activities necessary or appropriate to present this stipulation and the proposed settlement to the court for approval and, if the settlement is finally approved, to implement the settlement in accordance with the terms of the stipulation and orders of the court;

(5) PG&E is hereby approved and appointed as the Settlement Administrator to carry out the duties of the Claims Administrator set forth in the stipulation;

(6) the form and content of the Notice of Class and Collective Action Settlement (Hutchins Decl. Ex. 1-B) is approved;

(7) the form and content of the Class Settlement Opt-Out Form (_Id._) is approved;

(8) the form and content of the Consent to Join/Opt-In Form (_Id._) is approved;

1   (9) no later than twenty-one (21) days from the date of
2   this Order, defendant shall cause a copy of the Notice, Consent
3   to Join/Opt-In Form, and Opt-Out Form to be mailed by first class
4   mail to all class members who can be identified through
5   reasonable effort from defendant's records.  Within twenty-three
6   (23) days of this initial mailing, defendant shall determine
7   whether any notice is returned as undeliverable and shall perform
8   the methods of skip-tracing to locate the most accurate address
9   of the intended recipient as per the parties' stipulation.  If
10  unreturned within twenty-three (23) days, it shall be presumed
11  the intended addressee has received the initial mailing;

12  (9) a hearing (the "Final Fairness Hearing") shall be
13  held before this court on **July 19, 2010, at 2:00 p.m.** in
14  Courtroom 5 to determine whether the proposed settlement, on the
15  terms and conditions set forth in the stipulation, is fair,
16  reasonable, and adequate and should be approved by the court; to
17  determine whether a judgment as provided in the stipulation
18  should be entered finally approving the settlement; to consider
19  whether final collective action certification is appropriate; and
20  to consider class counsel's applications for attorneys' fees,
21  reimbursement of costs, and service payments.  The court may
22  continue the Final Fairness Hearing without further notice to the
23  members of the class;

24  (10) within thirty-one (31) days before the Final
25  Fairness Hearing, Class Counsel shall file with this court their
26  petition for an award of attorneys' fees and reimbursement of
27  expenses.  Any objections or responses to the petition shall be
28  filed no later than twenty (14) days before the Final Fairness

29

Hearing.  Class Counsel may file a reply to any opposition to memorandum filed by any objector no later than seven (7) days before the Final Fairness Hearing;

(11) within thirty-one (31) days prior to the Final Fairness Hearing, Class Counsel shall serve and file with the court the Settlement Administrator's declaration setting forth the services rendered, proof of mailing, a list of all class members who have timely opted out of the settlement and a list of all class members who have timely opted into the settlement;

(12) within thirty-one (31) days prior to the Final Fairness Hearing, Class counsel shall file and serve all papers in support of the settlement, request for enhancement for the class representative, and any request for attorneys' fees and costs;

(13) any person who has standing to object to the terms of the proposed settlement may appear at the Final Fairness Hearing in person or by counsel, if an appearance is filed as hereinafter provided, and be heard to the extent allowed by the court in support of, or in opposition to, (1) the fairness, reasonableness, and adequacy of the proposed settlement; (2) the requested award of attorneys' fees, reimbursement of costs, and incentive payment to class representative; and/or (3) the propriety of class certification.  To be heard in opposition, a person must, within sixty-six (66) calendar days after notice is mailed, (a) serve by hand or through the mails written notice of his, her, or its intention to appear, stating the name and case number of this litigation and each objection and the basis therefore, together with copies of any papers and briefs, upon

1  class counsel and upon counsel for defendant, and (b) file said
2  appearance, objections, papers and briefs with the court,
3  together with proof of service of all such documents upon counsel
4  for the parties.  Responses to any such objections and Class
5  Counsel's application for attorneys' fees, reimbursement of
6  costs, and the class representative's incentive payment shall be
7  served by hand or through the mails on the objectors (or on the
8  objector's counsel if any there be) and filed with the Clerk of
9  this court no later than fourteen (14) calendar days before the
10 Final Fairness Hearing.  Objectors may file optional replies no
11 later than one week before the Final Fairness Hearing in the same
12 manner described above.  Any settlement class member who does not
13 make his, her, or its objection in the manner provided herein
14 shall be deemed to have waived such objection and shall forever
15 be foreclosed from objecting to the fairness or adequacy of the
16 proposed settlement as memorialized in the stipulation, the
17 judgment entered, and the award of attorneys' fees, expenses, and
18 the incentive payment unless otherwise ordered by the court.
19 DATED:  March 4, 2010
20
21                    _____
22                    WILLIAM B. SHUBB
                       UNITED STATES DISTRICT JUDGE
23
24
25
26
27
28

                              31