MICHAEL L. TRACY, ESQ. (SBN 237779)
mtracy@michaeltracylaw.com
MEGAN ROSS HUTCHINS, ESQ. (SBN 227776)
mhutchins@michaeltracylaw.com
LAW OFFICES OF MICHAEL L. TRACY
2030 Main Street, Suite 1300
Irvine, CA  92614
T: (949) 260-9171
F: (866) 365-3051

Attorneys for Plaintiff
MANUEL MURILLO

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA -- SACRAMENTO

| | |
|---|---|
| MANUEL MURILLO, an individual, on behalf of himself and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PACIFIC GAS & ELECTRIC COMPANY, a California corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.  2:08-cv-01974-WBS-GGH<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL CERTIFICATION OF A SETTLEMENT CLASS**<br><br>[DECLARATION OF MEGAN ROSS HUTCHINS IN SUPPORT FILED CONCURRENTLY]<br><br>Date: July 19, 2010<br>Time: 2:00PM<br><br>Judge:  Hon. William B. Shubb<br>Complaint Filed:  August 22, 2008 |

To all PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on July 19, 2010 at 2:00 p.m., or as soon thereafter as the matter may be heard, in Department 5 of the United States District Court for the Eastern District of California, 501 I Street, Suite 4-200, Sacramento, CA 95814, Plaintiff MANUEL MURILLO will, and hereby does, move the Court for will and hereby does move, pursuant to Fed. Rules Civ. Proc., Rule 23, for final approval of the settlement ("Settlement") and certification of a settlement class as set forth in the Stipulation and Agreement of Settlement

1  ("Settlement Stipulation") between Plaintiff MANUEL MURILLO and Defendant PACIFIC
2  GAS & ELECTRIC COMPANY, and for an enhancement payment to Plaintiff Manuel
3  Murillo in the amount of $10,000.

DATED: June 18, 2010                LAW OFFICES OF MICHAEL L. TRACY

                                    By:    _____/s/_____
                                           MEGAN ROSS HUTCHINS, Attorney for
                                           Plaintiff MANUEL MURILLO

2.

## I. INTRODUCTION

The undersigned counsel for Plaintiff Manual Murillo ("Plaintiff") and Class Counsel hereby submits this brief to inform the Court regarding of the status of class notice administration process and to move for final approval of the class that was preliminarily certified by the Court in this matter.

This Court granted preliminary approval of the Parties' class action settlement and proposed notice to the class on March 5, 2010. The Court issued a tentative ruling ordering, within 31 days of the Final Fairness Hearing currently scheduled for July 19, 2010, the submission of: (i) a declaration setting forth the services rendered, proof of mailing, a list of all class members who have timely opted out of the settlement and a list of all class members who have timely opted into the settlement; and (ii) any request for attorneys' fees and an enhancement award. With respect to the first point, PG&E has separated submitted the Declaration of Ann Loper ("Loper Dec."), a PG&E employee with relevant personal knowledge.[1] With respect to the second point, Class Counsel will separately submit its request for attorneys' fees. Pursuant to the Settlement Agreement, PG&E does not and will not oppose a request for attorneys' fees and an enhancement award of up to (and including) $150,000. By and through this motion, Plaintiffs move this Court for an enhancement payment to Plaintiff Manuel Murillo in the amount of $10,000.

More than 90% of the putative class members were successfully mailed the class notice through the Initial Mailing. For those 113 individuals whose Initial Mailing was returned as undeliverable, PG&E located the most recent address by performing a search of the NCOA database, and a search through Experian, to which the Second Mailing was sent. There were zero timely-filed objections to the class settlement.

In sum, the Parties respectfully submit that the class notice process has been a remarkable success. If the Court has any additional concerns in this regard, which the Court

---

[1] Citations to the Loper Declaration have been added below, where appropriate.

1.

would like the Parties to address prior to the final approval hearing on July 19, 2010, the Parties are quite willing to do so.

## II.   THE CLASS NOTICE AND OPT-OUT PROCESS

### A.   The Final Class Notice Plan Was Generated Directly From The Court-Approved Notice Plan.

The Parties submitted a proposed "Notice Plan" with the papers originally filed in support of their joint motion for preliminary approval.  This Notice Plan specified deadlines for certain milestones in the class notice process, with the key reference point being the date that this Court granted preliminary approval.  Given that this Court granted such approval by its Order entered March 5, 2010, the Parties initiated the administration of the Settlement Agreement, previously filed with this Court.

### B.   Notice Was Adequately Provided To The Putative Class, With Few Opt-Outs And Zero Objections To The Settlement.

#### 1.   Initial Mailing

Pursuant to the Class Notice Plan, the Class Notice was mailed by PG&E, via first class mail, postage prepaid, to the 1116 individuals eligible to participate in the class settlement, on March 25, 2010 ("Initial Mailing"). (Loper Dec. ¶ 3.)  The Initial Mailing went to each putative class member at his/her last known address.  (*Id*.)  In response to the Initial Mailing, PG&E received 313 timely Opt-in / Consent to Join Forms, and 21 timely Opt-out Forms.  (Loper Dec. ¶ 4.)

#### 2.   Skip Tracing and Second Mailing

As of April 19, 2010, 113 Class Notices were returned to PG&E as undeliverable.  (Loper Dec. ¶ 5.)  PG&E then utilized the National Change of Address ("NCOA") service and "skip tracing" (via Experian, a credit reporting agency) to find updated addresses for these 92 individuals, in order to attempt to ensure delivery of the Class Notice.  (*Id*.)

PG&E found new and/or updated addresses for 113 potential class members, who were then eligible to receive the Second Mailing, which consisted of the same

documents as in the Initial Mailing. (*Id.*) PG&E sent the Second Mailing to these 113 individuals on April 28, 2010, in response to which PG&E received 45 timely Opt-in / Consent to Join Forms, and 4 timely Opt-out Forms. (Loper Dec. ¶ 6.) Thus, PG&E failed to receive a response to only 64 of the 113 Second Mailings. Accordingly, of the 1116 putative class members, the parties can be reasonably certain that 1052 (or approximately 95 %) received the class notice.

Parties to a class action settlement are required to distribute a class notice so that there is a "reasonable chance" that a "substantial percentage" of putative class members will receive the class notice. *See Cartt v. Superior Court*, 50 Cal. App. 3d 960, 974 (1975); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 251 (2001); *Archibald v. Cinerama Hotels*, 15 Cal.3d 853, 861 (1976); *see Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 319 (1950) (where the number of previously unidentified class members is small, notice by mail to all identifiable members is "reasonably certain to reach most of those interested in objecting [and] is [therefore] likely to safeguard the interests of all"). The success rate here with respect to the distribution of the Class Notice – 95% – is quite "substantial" under even the most exacting standard.

### C. Thirty-Two Percent Of The Putative Class Chose To Opt In / Participate

In total, PG&E received 358 Opt-in / Consent to Join Forms (32% of the putative class). (Loper Dec. ¶ 7, Exh. B.) Attached as Exhibit B to the Loper Declaration is a list of the 358 individuals who timely submitted Opt-in / Consent to Join Forms, which list includes these individuals' employee identification numbers and amounts due under the Settlement Agreement. Pursuant to the Paragraphs 22, 33 and 60(c) of the Settlement Agreement, PG&E applied a multiplier of 1.191 to ensure that the Minimum Floor of $200,000 in settlement payments was met. The total amount which would be paid to those who timely opted in, subject to approval by this Court, is shown at the bottom of Column B in Exhibit B: $200,020.80. The amounts to be paid to each individual are listed in Column B, immediately to the right of each individual's PG&E employee identification number.

### III. LEGAL DISCUSSION

#### A. The High Percentage Of Opt-Ins Weighs In Favor Of Final Approval.

Here, the above-average participation / opt-in rate of rate of 32% counsels in favor of final approval of the settlement. *See Ellis v. Edward D. Jones & Co., L.P.*, 527 F. Supp. 2d 439, 444-45 (W.D. Pa. 2007) (participation rate in opt-in actions not backed by a union is typically 15 to 30 percent)[2]; Gregory K. McGillivary, *Opt-Out Wage and Hour Class Actions Under State Law: The Next Big Wave in Litigation to Enforce Workers' Rights?*, 333 BNA Annual Meeting Documents 2006, Federal Labor Standards Committee CLE Program 335 ("Although there have not been any studies regarding the participation rate in opt-in collective actions, and there are few reported decisions that reveal these numbers, it has been estimated that no more than twenty percent of the workforce in a case are likely to participate.")[3]

#### B. There Were Zero Timely-Filed Objections To The Settlement.

As of the date on which the undersigned counsel executed this joint report, neither of the Parties had been served with any Notice of Objection (either timely or untimely filed). Neither of the Parties are aware of any objections (whether timely or untimely, filed or not filed) to the instant settlement. (Loper Dec. ¶ 8) This absence of any objection weighs heavily in favor of final approval. *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 624 (C.D. Cal. 1979) ("the Court finds persuasive the fact that eighty-four percent of the class has filed no opposition"); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members").[4]

---

[2] *Citing* Matthew W. Lampe & E. Michael Rossman, *Procedural Approaches for Countering the Dual-Filed FLSA Collective Action and State-Law Wage Class Action*, Lab. Law. Winter/Spring 2005 311, 313-14; *Attorneys Explore for Surge in Wage and Hour Lawsuits, Offer Strategies*, Daily Lab. Rep. (BNA) (Dec. 12, 2002); *Attorneys Discuss Strategies for Bringing and Defending FLSA Collective Action Lawsuits*, Daily Lab. Rep. (BNA) (Aug. 13, 2002)).

[3] *Compare Thiebes v. Wal-Mart Stores, Inc.*, 2002 WL 479840, *3 (D.Or. 2002) (opt-in rate of only 2.7 % in FLSA opt-in action counseled against Rule 23 class certification).

[4] *Cf. In re Anthracite Coal Antitrust Litig.*, 79 F.R.D. 707, 712-13 (M.D. Pa. 1978) ("extremely unusual" for there to be *no* objectors in a sizeable class action).

### C. The Number Of Opt-Outs Is Minimal Under These Circumstances.

In total, PG&E received 25 Opt-out Forms. (Loper Dec. ¶¶ 4, 6.) The percentage of the putative class who chose to opt out is approximately 2% (25 opt-outs / 1116 putative class members). This opt-out percentage weighs further in favor of final approval. *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) (fact that the "overwhelming majority" of the class did not opt out "presents at least some objective positive commentary as to its fairness"); *Wang v. Chinese Daily News, Inc.*, 236 F.R.D. 485, 488 (C.D. Cal. 2006) (1% opt-out rate is typical in employment actions); *see generally* Theodore Eisenberg and Geoffrey P. Miller, The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues, 57 Vand. L. Rev. 1529, 1549, Table 2 (October 2004) (mean opt-out rate is 1.4%, while median opt-out rate is 0.3%).

### D. Final approval should be granted because the settlement is fair, reasonable, and adequate.

A class action may be settled only with the Court's approval. Fed. R. Civ. Proc. 23(e). In determining whether to approve a class settlement, the Court must determine that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(2).

The procedures for settling a class are that (1) Preliminary approval is granted, (2) Notice to class members is given, and (3) a Final Approval hearing for fairness is conducted. Here, the Court has already granted preliminary approval and notice has been provided to class members. The issue is whether the settlement reached is fair.

In determining whether a class action settlement is fair, Courts typically use the following factors: the strength of plaintiffs' case; the risk of litigation; the amount of the settlement; the extent of discovery; whether the action can be maintained as a class; the experience and views of counsel; and the reaction of class members to the proposed settlement. Officers for Justice v. Civil Service Com., 688 F.2d 615, 625 (9th Cir. Cal. 1982). While the above list is not exhaustive, the purpose of the fairness hearing is to ensure that the settlement that was reached was not the product of fraud or collusion. Id. In this matter, a fair settlement was reached based on arms-length negotiation. Final approval should be granted.

**E.    The payment of $10,000 to Class Representative Manuel Murillo is fair and typical for the amount of work he performed as part of this lawsuit.**

The payment of an additional $10,000 to Mr. Murillo is warranted by the amount of work that he put into this case. Unlike the other class members who did little more than read a class notice that was sent to them and perhaps conduct some research in the comfort of their own home, Mr. Murillo was an active participate in this lawsuit. As such, he put herself at risk for potentially liability for substantial costs in this litigation.

Mr. Murillo spent a day of deposition being grilled not merely on the claims at issue in this matter, but also as to his entire personal history as well as his termination from PG&E. (Declaration of Megan Ross Hutchins, hereinafter "Decl. MRH" ¶2) He met extensively with class counsel to explain the copious evidence in this case, and attended a 9.5 hour mediation, where he gave important input as to the claims and class. (Decl. MRH ¶3,4)

After the settlement was reached, Mr. Murillo continues to spend significant time working with Class Counsel ensuring that all the proper employees were included in the settlement. (Decl. MRH ¶5).

The enhancement is not disproportionate to what other employees who did nothing in this litigation received. Based on the Declaration of Lopez, several class members are receiving payments in excess of $3,000 and 64 are receiving payments in excess of $1,000. Given the extensive time and effort put forth by Mr. Murillo, this additional payment is reasonable.

It should also be noted that Mr. Murillo's enhancement payment does not take anything away from the Class Members' payments. That is, the enhancement, as well as attorney's fees, are a separate component, and the Class Members will collectively receive $200,000 in payments regardless of Mr. Murillo's enhancement.

6.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court grant final approval to the class settlement and award an enhancement of $10,000 to Class Representative Manuel Murillo.

Respectfully submitted,

Dated: June 18, 2010

/S/
MEGAN ROSS HUTCHINS
Law Office of Michael Tracy
Attorneys for Plaintiff Manuel Murillo and
Class Counsel