UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MANUEL MURILLO, an individual,          NO. CIV. 2:08-1974 WBS GGH
on behalf of himself and all
others similarly situated,

                                        MEMORANDUM AND ORDER RE: FINAL
        Plaintiff,                      APPROVAL OF CLASS AND
                                        COLLECTIVE ACTION SETTLEMENT
    v.

PACIFIC GAS & ELECTRIC
COMPANY, a California
corporation, and DOES 1
through 10, inclusive,

        Defendants.
_____/


                        ----oo0oo----


        Plaintiff Manuel Murillo brought this action seeking a

collective and class action suit against defendant Pacific Gas &

Electric Company ("PG&E") for alleged violations of the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219; the

California Labor Code, Cal. Lab. Code §§ 201, 203, 204, 226(a),

226.3, 226.7, 510, 512, 1194; and California's Unfair Competition

                            1

Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210.  Presently before the court is plaintiff's motion for final approval of the settlement of his hybrid action which consists of a Federal Rule of Civil Procedure 23(b)(3) class action and FLSA § 216(b) collective action.

I.   <u>Factual and Procedural Background</u>

Plaintiff was employed by defendant as a meter reader from February 5, 2006 to May 16, 2008.  As part of his compensation, plaintiff received funds to purchase health care and other benefits in lieu of receiving these benefits directly from defendant.  These funds were known as the Hiring Hall Line Benefit Premium ("Hiring Hall Premium").

On August 22, 2008, plaintiff filed a putative class and collective action claiming that defendant engaged in unfair and illegal business practices in its payment of meter readers who received the Hiring Hall Premium.  (Docket No. 1.)  Plaintiff amended his Complaint once as a matter of course.  (Docket No. 16.)  On July 24, 2009, plaintiff filed a Second Amended Complaint that withdrew several previously asserted causes of action and plead a federal FLSA claim as well as state claims that specifically alleged that defendant (1) failed to properly calculate meter readers' overtime premiums in accordance with the FLSA by excluding the Hiring Hall Premium from its calculations of overtime pay and (2) failed to include all required information on meter readers' paychecks.  (Docket No. 26.)  Plaintiff filed a motion for conditional certification of a collective action class pursuant to § 216(b) of the FLSA on July 28, 2009, but withdrew this motion one day later.  (<u>See</u> Docket

1  Nos. 27, 28.)

2        On October 6, 2009, the parties attended a day-long

3  mediation session with a neutral third-party mediator, Lester

4  Levy, Esq. of JAMS, where they agreed to settlement terms.  The

5  parties then filed a motion for preliminary approval of a class

6  and collective action settlement on January 26, 2010.  (Docket

7  No. 30.)  In its Order granting preliminary approval of the

8  settlement, the court provisionally certified the following

9  class: "all Hiring Hall meter readers employed by PG&E between

10 August 18, 2006 and December 31, 2009."  The court appointed

11 Manuel Murillo as class representative, the Law Offices of

12 Michael Tracy as class counsel, and PG&E as settlement

13 administrator.  The court also approved the class opt-in form,

14 opt-out form, and notice of settlement, and directed class

15 counsel to file with the court, within thirty-one days prior to

16 the final fairness hearing, the settlement administrator's

17 declaration setting forth the services rendered, proof of

18 mailing, and list of all class members who opted out of and opted

19 into the settlement.  The court set the final fairness hearing

20 for July 19, 2010, at 2:00 p.m.

21        After conducting the final fairness hearing and

22 carefully considering the settlement terms, the court now

23 addresses whether this collective and class action should receive

24 final certification; whether the proposed settlement is fair,

25 reasonable, and adequate; and whether class counsel's request for

26 attorneys' fees and costs, as well as an incentive payment for

27 the named plaintiff, should be granted.

28 II.  <u>Discussion</u>

                                3

1  A. <u>FLSA Collective Certification</u>

2   The FLSA requires employers to pay an overtime rate of

3 one and one-half times their regular pay rate for hours worked

4 over forty hours in a week.  29 U.S.C. § 207(a).  The statute

5 provides that an aggrieved employee may bring a collective action

6 on behalf of himself and other employees "similarly situated"

7 based on an employer's failure to adequately pay overtime wages.

8 <u>Id.</u> § 216(b).  To maintain a collective action under the FLSA a

9 plaintiff must demonstrate that the putative collective action

10 members are similarly situated.  <u>Id.</u>; <u>Adams v. Inter-Con Sec.</u>

11 <u>Sys.</u>, 242 F.R.D. 530, 535-36 (N.D. Cal. 2007); <u>Leuthold v.</u>

12 <u>Destination Am., Inc.</u>, 224 F.R.D. 462, 466 (N.D. Cal. 2004).

13   Neither the FLSA nor the Ninth Circuit have defined

14 "similarly situated."  <u>Adams</u>, 242 F.R.D. at 536; <u>Leuthold</u>, 224

15 F.R.D. at 466.  A majority of courts have adopted a two-step

16 approach for determining whether a class is "similarly situated."

17 <u>See Leuthold</u>, 224 F.R.D. at 466 (compiling district court cases

18 following the two-step approach); <u>see, e.g.</u>, <u>Thiessen v. Gen.</u>

19 <u>Elec. Capital Corp.</u>, 267 F.3d 1095, 1102-03 (10th Cir. 2001);

20 <u>Hipp v. Liberty Nat. Life. Ins. Co.</u>, 252 F.3d 1208, 1219 (11th

21 Cir. 2001); <u>Mooney v. Aramco Serv. Co.</u>, 54 F.3d 1207, 1213-14

22 (5th Cir. 1995), <u>overruled on other grounds by</u> <u>Desert Palace,</u>

23 <u>Inc. v. Costa</u>, 539 U.S. 90 (2003).  Under this approach, a

24 district court first determines, based on the submitted pleadings

25 and affidavits, whether the proposed class should be notified of

26 the action.  <u>Leuthold</u>, 224 F.R.D. at 467.  District courts have

27 held that conditional certification requires only that

28 "'plaintiffs make substantial allegations that the putative class

4

members were subject to a single illegal policy, plan or decision.'" <u>Adams</u>, 242 F.R.D. at 536 (citing <u>Leuthold</u>, 224 F.R.D. at 468); <u>see also</u> <u>Thiessen</u>, 267 F.3d at 1102.

The second-step usually occurs after discovery is complete, at which time the defendants may move to decertify the class. <u>Leuthold</u>, 224 F.R.D. at 467. In this step, the court makes a factual determination about whether the plaintiffs are similarly situated by weighing such factors as "(1) the disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which appeared to be individual to each plaintiff, and (3) fairness and procedural considerations." <u>Misra v. Decision One Mortg. Co.</u>, 673 F. Supp. 2d 987, 993 (C.D. Cal. 2008) (quotation marks, citations omitted). Even when the parties settle, the court "must make some final class certification finding before approving a collective action settlement." <u>Carter v. Anderson Merchandisers, LP</u>, Nos. EDCV 08-00025-VAP (OPx), EDCV 09-0216-VAP (Opx), 2010 WL 144067, at *3 (C.D. Cal. Jan. 7, 2010) (citations omitted).

The court previously found that plaintiffs satisfied the modest factual showing that is required with respect to the first-step of this approach and granted conditional certification. Since this case did not proceed to trial, defendant did not have the opportunity to decertify the class, and accordingly any motion to decertify under the FLSA is moot. <u>See</u> <u>Misra v. Decision One Mortg. Co.</u>, No. SA CV 07-0994 DOC (Rcx), 2009 WL 4581276, at *4 (C.D. Cal. April 13, 2009). Since the analysis required by the second step, including issues of factual similarities between the employees and their claims,

5

largely overlap with class certification analysis under Federal
Rule of Civil Procedure 23(a), the court will now turn to analyze
the propriety of class certification under Rule 23.  See id.

B.   Rule 23 Class Certification

The Ninth Circuit has declared that a strong judicial
policy favors settlement of class actions.  Class Plaintiffs v.
City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).
Nevertheless, where, as here, "parties reach a settlement
agreement prior to class certification, courts must peruse the
proposed compromise to ratify both [1] the propriety of the
certification and [2] the fairness of the settlement."  Staton v.
Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

In conducting the first part of its inquiry, the court
"must pay 'undiluted, even heightened, attention' to class
certification requirements" because, unlike in a fully litigated
class action suit, the court will not have future opportunities
"to adjust the class, informed by the proceedings as they
unfold."  Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 620
(1997); accord Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th
Cir. 1998).  The parties cannot "agree to certify a class that
clearly leaves any one requirement unfulfilled," and consequently
the court cannot blindly rely on the fact that the parties have
stipulated that a class exists for purposes of settlement.  Berry
v. Baca, No. 01-02069, 2005 WL 1030248, at *7 (C.D. Cal. May 2,
2005); see also Amchem, 521 U.S. at 622 (observing that nowhere
does Rule 23 say that certification is proper simply because the
settlement appears fair).  In conducting the second part of its
inquiry, the "court must carefully consider 'whether a proposed

settlement is fundamentally fair, adequate, and reasonable,' recognizing that '[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . .'" <u>Staton</u>, 327 F.3d at 952 (quoting <u>Hanlon</u>, 150 F.3d at 1026); <u>see also</u> Fed. R. Civ. P. 23(e) (outlining class action settlement procedures).

Procedurally, the approval of a class action settlement takes place in two stages.  In the first stage of the approval process, "'the court preliminarily approve[s] the Settlement pending a fairness hearing, temporarily certifie[s] the Class . . . , and authorize[s] notice to be given to the Class.'"  <u>West v. Circle K Stores, Inc.</u>, No. 04-0438, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006) (quoting <u>In re Phenylpropanolamine (PPA) Prods. Liab. Litig.</u>, 227 F.R.D. 553, 556 (W.D. Wash. 2004)).  The court previously preliminarily approved the class action settlement in its March 5, 2010 Order.  (Docket No. 39.)

In the second stage, the court holds a fairness hearing, after notice is given to putative class members, where the court entertains any of their objections to (1) the treatment of this litigation as a class action and/or (2) the terms of the settlement.  <u>See</u> <u>Diaz v. Trust Territory of Pac. Islands</u>, 876 F.2d 1401, 1408 (9th Cir. 1989) (holding that prior to approving the dismissal or compromise of claims containing class allegations, district courts must, pursuant to Rule 23(e), hold a hearing to "inquire into the terms and circumstances of any dismissal or compromise to ensure that it is not collusive or prejudicial").  Following the fairness hearing, the court makes a final determination as to whether the parties should be allowed

7

1  to settle the class action pursuant to the terms agreed upon.

2  DIRECTV, Inc., 221 F.R.D. at 525.

3       A class action will be certified only if it meets the

4  four prerequisites identified in Federal Rule of Civil Procedure

5  23(a) and additionally fits within one of the three subdivisions

6  of Rule 23(b).  Although a district court has discretion in

7  determining whether the moving party has satisfied each Rule 23

8  requirement, Califano v. Yamasaki, 442 U.S. 682, 701 (1979);

9  Montgomery v. Rumsfeld, 572 F.2d 250, 255 (9th Cir. 1978), the

10 court must conduct a rigorous inquiry before certifying a class.

11 Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 161 (1982); E.

12 Tex. Motor Freight Sys. v. Rodriquez, 431 U.S. 395, 403-05

13 (1977).

14       1.   Rule 23(a)

15       Rule 23(a) restricts class actions to cases where:

16       (1) the class is so numerous that joinder of all members
         is impracticable; (2) there are questions of law or fact
17       common to the class; (3) the claims or defenses of the
         representative parties are typical of the claims or
18       defenses of the class; and (4) the representative parties
         will fairly and adequately protect the interests of the
19       class.

20 Fed. R. Civ. P. 23(a).  These requirements are more commonly

21 referred to as numerosity, commonality, typicality, and adequacy

22 of representation, respectively.  Hanlon v. Chrysler Corp., 150

23 F.3d 1011, 1019 (9th Cir. 1998).  In the court's Order granting

24 preliminary approval of the settlement, the court found that the

25 putative class satisfied the numerosity, commonality, typicality,

26 and adequacy of representation requirements of Rule 23(a).  Since

27 the court is unaware of any changes that would alter its Rule

28 23(a) analysis, and because the parties indicated at the fairness

8

1   hearing that they were unaware of any such developments, the
2   court finds that the class definition proposed by plaintiffs
3   meets the requirements of Rule 23(a).

4           2.   Rule 23(b)

5           An action that meets all the prerequisites of Rule
6   23(a) may be maintained as a class action only if it also meets
7   the requirements of one of the three subdivisions of Rule 23(b).
8   Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 163 (1974).  In this
9   case, plaintiff seeks certification under Rule 23(b)(3).  A class
10  action may be maintained under Rule 23(b)(3) if (1) "the court
11  finds that questions of law or fact common to class members
12  predominate over any questions affecting only individual
13  members," and (2) "that a class action is superior to other
14  available methods for fairly and efficiently adjudicating the
15  controversy."  Fed. R. Civ. P. 23(b)(3).

16          In its Order granting preliminary approval of the
17  settlement, the court found that both prerequisites of Rule
18  23(b)(3) were satisfied.  The court is unaware of any changes
19  that would affect this conclusion, and the parties indicated at
20  the fairness hearing that they were aware of no such
21  developments.  Accordingly, since the settlement class satisfies
22  both Rule 23(a) and 23(b)(3), the court will grant final class
23  and collective action certification.

24      C.  Rule 23(e): Fairness, Adequacy, and Reasonableness of
25          Proposed Settlement

26          Having determined that class treatment appears to be
27  warranted, the court must now address whether the terms of the
28  parties' settlement appear fair, adequate, and reasonable.  In

conducting this analysis, the court must balance several factors including

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Hanlon, 150 F.3d at 1026; but see Molski v. Gleich, 318 F.3d 937, 953-54 (9th Cir. 2003) (noting that a district court need only consider some of these factors--namely those designed to protect absentees).

> 1.   Terms of the Settlement Agreement

The key terms of the settlement agreement are as follows:

> (1) **The Settlement Class**: Class members include all meter readers employed by defendant who received the Hiring Hall Premium between August 18, 2006 and December 31, 2009.  (Hutchins Decl. ¶ 9.)

> (2) **Notice:** Defendant sent a class notice, Consent to Join/Opt-In Form, and Opt-Out Form to each individual in the class within twenty-one days after the entry of the order conditionally approving the settlement.  Any class members whose notice was returned as undeliverable within twenty-three days of the initial mailing defendant was skip traced and sent a second mailing within thirty-three days of the initial mailing.  (Settlement Agreement ¶ 62.)

> (3) **Opt-In Procedure:** To opt-in to the settlement class members submitted and signed an Opt-In Form and returned the form so that it was postmarked on or before thirty-three days after the initial mailing, or if in the second mailing, thirty-three days after the second mailing.  (Id. ¶ 63.)  Sending an Opt-In Form bound the class member to both the collective action and Rule 23 class action.  (Id. ¶ 64(c).)

> (4) **Opt-Out Procedure:** To opt-out of the settlement class members must have submitted and signed an Opt-Out Form and returned the form so that it was postmarked on

or before thirty-three days after the initial mailing, or if in the second mailing, thirty-three days after the second mailing. (Id. ¶ 64.)   Sending in both an Opt-In and Opt-Out form deemed the class member to be opted into the Rule 23 and FLSA collective action and the Opt-Out form did not have any legal effect.   (Id. ¶ 64(c).)   Failure to send in either an Opt-In or Opt-Out form by the opt-in and opt-out deadlines bound the class member to the settlement of the Rule 23 state law claims, but does not preclude the class member from pursuing future FLSA claims against defendant.   (Id. ¶ 64(b).)

(5) **Objections to Settlement:** Any individual class member who wished to object to the settlement could do so if they filed any objection with the Clerk of the Court and served it on all counsel by the close of the opt-in/opt-out period.   Otherwise, the objection was deemed waived.   (Id. ¶ 65.)

(6) **Settlement Amount:** In total the settlement amount paid to class members is $200,020.80.   (Loper Decl. ¶ 7.)

(7) **Attorney's Fees and Enhancement Award:** Class counsel requests a separate award of $140,000 in attorney's fees and costs, and an enhancement award for the named plaintiff of $10,000.   Defendant has agreed not to oppose this request. (Settlement Agreement ¶ 59.)

(8) **Settlement Distribution:** Settlement funds will be distributed on an individualized basis using a formula created by the parties.   The parties calculated the amount of FLSA overtime payments arguably due to each individual in the class.   (Id. ¶ 60.)   The parties then subtracted the "extra compensation" offset to which defendant was entitled within each pay period.[1]   (Id.)   This number was then multiplied by 1.5, which represents the addition of fifty percent of the maximum allowed liquidated damages available under the FLSA. (Id.)   Because the total number owed to each class member was less than $200,000 after these calculations, defendant increased the amount paid to each class member on a pro-rata basis such that the total settlement amount is equal to $200,000.   (Id. ¶ 60(c).)

(9) **Release:** Class members agreed to release "any and all charges, claims causes of action, lawsuits,

---

[1]     Under the FLSA, if an employer pays an overtime rate for hours worked below forty in a week, the employer may subtract such non-mandatory "extra compensation" from the overtime amount it otherwise owes employees.   See 29 U.S.C. § 207(e)(5-7).

11

demands, complaints, liabilities, obligations, penalties, fines, promises, agreements, controversies, damages, rights, offsets, liens, attorneys' fees, costs, expenses, losses, debts, interest, penalties, and fines of any kind, . . . for any relief whatsoever, including monetary, injunctive, or declaratory relief, whether direct or indirect, whether under federal law or law of any state, whether contingent or vested, which the Named Plaintiff or any Class Member had, now has, or may have in the future against Released Parties or any of them for any acts occurring on or before December 32, 2009 that were asserted in this Action or that are based upon, arise out of, or relate to the facts of this Action." (Id. ¶ 30(a).)

2.   Rule 23(e) Factors

a.   Strength of the Plaintiff's Case

Ascertaining the strength of plaintiff's case is difficult due to the limited record of evidence available to the court.  Prior to settlement in October 2009, the only motion filed in this action was a motion to strike portions of defendant's answer to the First Amended Complaint.  Discovery also remained open at the time of settlement.  As a result, the court does not have the benefit of a long record of adversarial testing of plaintiff's case prior to plaintiff's unopposed motion to certify the settlement class.  However, it is evident that a number of legal issues relating to plaintiff's case were disputed by defendant at mediation, including whether the Hiring Hall Premium could be excluded from overtime calculations as a health benefit and whether defendant was entitled to substantial offsets for any inadequate overtime pay.  Nonetheless, the paucity of the record ultimately precludes the court from assessing whether plaintiff's case is either strong or weak.  Accordingly, the court will not consider this factor for settlement purposes.

b.   Risk, Expense, Complexity, and Likely

12

<u>Duration of Further Litigation</u>

Although the court cannot assess the strength of plaintiff's case from the record, the presence of substantially disputed legal issues at the heart of plaintiff's case does serve to heighten the risk and uncertainty that both parties would face if this action went to trial.  <u>See</u> <u>Hanlon</u>, 150 F.3d at 1026. First, the parties disagreed over whether the FLSA even required Hiring Hall Premium payments to be included in overtime pay calculations.  The parties specifically disputed whether the premium could be excluded from overtime calculations as a health care benefit pursuant to 29 U.S.C. § 207(e)(4). (<u>See</u> Settlement Agreement ¶ 46.)

Second, the parties disagreed over the extent to which defendant was entitled to offsets for any underpayment of overtime because of substantial amount of extra compensation, including weekend and holiday pay, that defendant provided to its employees. (<u>Id.</u> ¶¶ 48-49.)  Defendant contended that it was entitled to reduce overtime obligations by any extra compensation each employee received over the entire period of the lawsuit, rather than during each individual pay period; a view which is shared by the majority of courts.  <u>See, e.g.</u>, <u>Farris v. County of Riverside</u>, 667 F. Supp. 2d 1151, 1164-65 (C.D. Cal. 2009).  If defendant were to prevail on its interpretation of the offset period, class members would likely have been able to recover little, if any, damages from defendant.  Third, the parties disagreed over whether plaintiff was entitled to liquidated damages under the FLSA. (Settlement Agreement ¶ 50.)  These disputed and novel legal issues injected a great deal of risk and

13

1 uncertainty for both sides into further litigation of this

2 action.

3       Assuming the case progressed even further, the

4 complexity and duration of the litigation would also have been

5 considerable.  With a class of over 1,000 members, completing

6 discovery in this case and going through a series of dispositive

7 motions would have been extremely costly.  Accordingly, the court

8 finds that the uncertainty and likely expense and duration of

9 further litigation favors settlement in this case.

10       c.   Risk of Maintaining Class-Action Status

11       Throughout Trial

12       The court is unaware of any specific difficulty in

13 maintaining class-action status were this case to continue to

14 trial.  Accordingly, the court will not consider this factor for

15 settlement purposes.  See In re Veritas Software Corp. Sec.

16 Litig., No. 03-0283, 2005 WL 3096079, at *5 (N.D. Cal. Nov. 15,

17 2005) (favoring neither approval nor disapproval of settlement

18 where the court was "unaware of any risk involved in maintaining

19 class action status"), aff'd in relevant part, 496 F.3d 962 (9th

20 Cir. 2007).

21       d.   Amount Offered in Settlement

22       The value of the settlement in this case is

23 $200,020.80, which will be paid out to class members based upon

24 the number of overtime hours they worked while employed for

25 defendant.  (See Loper Decl. Ex. B.)  Defendant has also agreed

26 to make separate payments of $132,602.00 in attorney's fees,

27 $7,398.00 in costs, and a $10,000.00 incentive payment to the

28 named plaintiff.  (Mot. Attorney's Fees at 1.)  As of the time of

1  the fairness hearing 358 class members opted in and are eligible

2  to receive claims from the settlement administrator. (Loper

3  Decl. ¶ 7.)

4          According to an analysis submitted by the settlement

5  administrator, class members will almost uniformly recover more

6  than they would have been due if they had prevailed on their

7  claims and plaintiff's interpretation of the offset period was

8  adopted, taking the three year statute of limitations into

9  account. (See id. Ex. B.) Class members' actual recovery,

10 therefore, at least appears comparable to their injuries and is

11 fair and reasonable in light of the risks and costs of further

12 litigation in this case. Accordingly, the court finds that the

13 amount offered favors approving the settlement.

14               e.   Extent of Discovery Completed and the Stage

15                    of the Proceedings

16          The parties arrived at settlement at an advanced stage

17 of the proceedings. At the time of the mediation session in

18 October 2009 that led to settlement, discovery had been ongoing

19 in this matter for almost a year and the parties were two months

20 away from the close of discovery. (See Status (Pretrial

21 Scheduling) Order (Docket No. 13.) at 2-3.) A settlement that

22 occurs in an advanced stage of the proceedings "suggests that the

23 parties . . . carefully investigated the claims before reaching a

24 resolution." Alberto v. GMRI, Inc., No. Civ. 07-1895 WBS DAD,

25 2008 WL 4891201, at *9 (E.D. Cal. Nov. 12, 2008) (internal

26 citations omitted). The parties' use of third-party mediation

27 also suggests that they had sufficient information about the

28 claims to present their arguments to an experienced mediator and

considered a neutral opinion in evaluating the strength of their
arguments in this matter.  Accordingly, the court finds that
amount of discovery completed and the stage of the proceedings at
the time of settlement weigh in favor of settlement in this case.

f.   Experience and Views of Counsel

The Law Offices of Michael Tracy, class counsel in this
action, specializes in employment law and has served as class
counsel in numerous federal and state class action lawsuits.
(See Hutchins Decl. ¶¶ 4-5.)  The lead counsel for the class has
also personally litigated over 200 wage and hour cases.  (Id.)
Therefore, class counsel is familiar with the attendant risks of
litigating class action lawsuits similar to this case.

Class counsel, moreover, indicates that it endorses the
settlement as fair, adequate, and reasonable.  (Id. at ¶ 8.)
When approving class action settlements, the court must give
considerable weight to class counsel's opinions due to counsel's
familiarity with the litigation and its previous experience with
class action lawsuits.  In re Wash. Pub. Power Supply Sys. Sec.
Litig., 720 F. Supp. 1379, 1392 (D .Ariz. 1989) (citing Officers
for Justice v. Civil Serv. Comm'n of the City & County of S.F.,
688 F.2d 615, 625 (9th Cir. 1982)).  Thus, this factor supports
approval of the Settlement Agreement.

g.   Presence of a Government Participant

No government party participated in this matter; this
factor, therefore, is irrelevant to the court's analysis.

h.   Reaction of the Class Members to the Proposed
Settlement

Using a mailing list generated by defendant's

16

employment records, the settlement administrator mailed packets

comprised of the court-approved class notice, opt-in, and opt-out

forms to 1,116 potential class members. (Loper Decl. ¶ 3.)  When

113 of the packets were returned as undeliverable, the settlement

administrator used the National Change of Address service and

"skip tracing" via the credit reporting agency Experian to find

updated addresses for these individuals. (Id. ¶ 5.)  The

settlement administrator then mailed the packets to these 113

individuals, none of which were returned as undeliverable. (Id.

¶¶ 5-6.)  In total, 358 individuals opted-in to the settlement,

and only 25 opted out. (Id. ¶ 7.)

       The notice complied with Federal Rules of Civil

Procedure 23(c)(2) and 23(e).  It provided the best notice

practicable under the circumstances, and it informed potential

class members of the settlement amount, the basis of the lawsuit,

the definition of the class, the procedure for and consequences

of opting-in to the settlement, the procedure for and

consequences of objecting to or obtaining exclusion from the

settlement, and the date of the final fairness hearing.

       As of this date, no member of the class has filed an

objection to the settlement. (Id. ¶ 9.)  "It is established that

the absence of a large number of objections to a proposed class

action settlement raises a strong presumption that the terms of a

proposed class settlement action are favorable to the class

members." In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036,

1043 (N.D. Cal. 2008) (quoting Nat'l Rural Telecomms. Coop. v.

DIRECTV, Inc., 221 F.R.D. 523, 528-29 (C.D. Cal. 2004)).

Therefore, the court finds that this factor weighs in favor of

1    settlement.

2        D.   <u>Attorneys' Fees</u>

3        Federal Rule of Civil Procedure 23(h) provides, "In an

4    action certified as a class action, the court may award

5    reasonable attorneys' fees and nontaxable costs authorized by law

6    or by agreement of the parties . . . ."   The parties agreed as

7    part of the Settlement Agreement that defendant would pay

8    attorneys' fees, costs, and an enhancement award to plaintiff of

9    up to $150,000.00 in addition to the funds paid to class members.

10   To determine attorneys' fees, courts "typically apply either the

11   percentage-of-recovery method or the lodestar method."[2]   <u>In re</u>

12   <u>Rite Aid Corp. Sec. Litig.</u>, 396 F.3d 294, 300 (3d Cir. 2005)

13   (internal quotations and citation omitted).   While the

14   percentage-of-recovery methods is favored in common fund cases,

15   here, where attorneys' fees do not detract from a common

16   settlement fund, the lodestar method is more appropriate.   <u>See</u>

17   <u>id.</u>

18        "In an action where a district court is exercising its

19   subject matter jurisdiction over a state law claim, so long as

20   'state law does not run counter to a valid federal statute or

21   rule of court, and usually it will not, state law denying the

22   right to attorney's fees or giving a right thereto, which

23   reflects a substantial policy of the state, should be followed.'"

24   <u>MRO Commc'ns, Inc. v. AT & T Corp.</u>, 197 F.3d 1276, 1281 (9th Cir.

25   1999) (citing <u>Alyeska Pipeline Serv. Co. v. Wilderness Soc'y</u>, 421

26   _____

27        [2]   Under the percentage-of-recovery method, the court
     calculates the fee award by designating a percentage of the total
28   common fund.   <u>Six Mexican Workers v. Ariz. Citrus Growers</u>, 904
     F.2d 1301, 1311 (9th Cir. 1990).

U.S. 240, 259 n.31 (1975)).   Thus, when a federal court has
federal question jurisdiction and exercises supplemental
jurisdiction over a state law claim, the court may award
attorney's fees under the applicable statute.   See MRO Commc'ns,
197 F.3d at 1281-83.

In this case, class members are entitled to a statutory
award of attorneys' fees pursuant to § 216(b) of the FLSA and
California Code of Civil Procedure section 1021.5.   See 29 U.S.C.
§ 216(b) ("The court in such action shall, in addition to any
judgment awarded to the plaintiff or plaintiffs, allow a
reasonable attorney's fee to be paid by the defendant, and costs
of the action."); Parks v. Eastwood Ins. Servs., Inc., No. SA CV
02-507-GLT (MLGx), 2005 WL 6007833, at *2-3 (C.D. Cal. June 28.
2005) (holding a hybrid FLSA-California state law action was
entitled to attorney's fees under California Code of Civil
Procedure section 1021.5) rev'd on other grounds by 240 Fed.
Appx. 172 (9th Cir. 2007).

"[T]he fee setting inquiry in California ordinarily
begins with the 'lodestar,' i.e., the number of hours reasonably
expended multiplied by the reasonable hourly rate."   PLCM Group
v. Drexler, 22 Cal. 4th 1084, 1095 (2000).   "The reasonable
hourly rate is that prevailing in the community for similar
work."   Id. (citing Margolin v. Reg'l Planning Comm'n, 134 Cal.
App. 3d 999, 1004 (1982)).   The lodestar may then by adjusted
upward or downward "by the court based on factors including . . .
(1) the novelty and difficulty of the questions involved, (2) the
skill displayed in presenting them, (3) the extent to which the
nature of the litigation precluded other employment by the

19

attorneys, (4) the contingent nature of the fee award." <u>Ketchum</u>
<u>v. Moses</u>, 24 Cal. 4th 1122, 1132 (2001).  The purpose of
adjusting the lodestar is to fix the fee for the action in
question at fair market value.  <u>Id.</u>

A similar approach is applied under federal law.  The
court first calculates the lodestar by taking the number of hours
reasonably expended by the litigation and multiplying it by a
reasonable hourly rate.  <u>Fisher v. SJB-P.D. Inc.</u>, 214 F.3d 1115,
1119 (9th Cir. 2000) (citing <u>Hensley v. Eckerhart</u>, 461 U.S. 424,
433 (1983)).  The court may then adjust the lodestar based on an
evaluation of the factors articulated in <u>Kerr v. Screen Extras</u>
<u>Guild, Inc.</u>, 536 F.2d 67 (9th Cir. 1975) that are not subsumed
under the lodestar calculation.[3]  <u>Id.</u>

Federal law, unlike California law, does not allow for
contingency multipliers.  <u>Compare</u> <u>City of Burlington v. Daque</u>,
505 U.S. 557, 567 (1992) <u>with</u> <u>Serano v. Priest</u>, 20 Cal. 3d 25,
48-49 (1977).  Here, class counsel requests $89,041.00 in
attorneys' fees with a multiplier of 1.5, bringing the total fees
to $132,602.00.  Accordingly, the court will first evaluate the
attorneys' fee award under California law.

Plaintiff's proposed lodestar amount principally

---

[3]      The factors articulated by the Ninth Circuit in <u>Kerr</u>
are: (1) the time and labor required, (2) the novelty and
difficulty of the questions involved, (3) the skill required to
perform the legal service properly, (4) the preclusion of other
employment by the attorney due to acceptance of the case, (5) the
customary fee, (6) whether the fee is fixed or contingent, (7)
time limitations imposed by the client or the circumstances, (8)
the amount involved and the results obtained, (9) the experience,
reputation, and ability of the attorneys, (10) the
"undesirability" of the case, (11) the nature and length of the
professional relationship with the client, and (12) awards in
similar cases.  <u>Kerr</u>, 526 F.2d at 70.

accounts for the hours expended by attorneys Michael L. Tracy and
Megan Ross Hutchins and paralegal Virginia Tomlinson.  Tracy and
Hutchins ask for an hourly rate of of $300 per hour, and Tomlinson
asks for an hourly rate of $95 per hour.  A reasonable rate is
typically based upon the prevailing market rate in the community
for "similar work performed by attorneys of comparable skill,
experience, and reputation."  Chalmers v. City of Los Angeles,
796 F.2d 1205, 1210 (9th Cir. 1986); see also Blum v. Stenson,
465 U.S. 886, 895-96 n.11 (1984) ("[T]he burden is on the fee
applicant to produce satisfactory evidence . . . that the
requested rates are in line with those prevailing in the
community."); Drexler, 22 Cal. 4th at 1095.  The relevant
community is generally the forum in which the court sits.  Barjon
v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997).

          In support of their requested fee rates, Tracy,
Hutchins, and Tomlinson each submit a declaration.  Tracy's
declaration states that his firm normally charges an hourly rate
of $300 per hour for work by attorneys and $95 per hour for
paralegal work for non-contingency fee cases, including cases in
this District, and that the firm billed approximately $50,000
worth of hourly work at this rate.  (Tracy Decl. ¶ 9.)  Several
California Federal District Courts have also awarded Tracy's firm
an hourly rate of $300 per hour in similar wage and hour class
actions.  (Id. ¶¶ 12-13.)  Hutchins's declaration states that she
has similarly been awarded attorney's fees at a $300 per hour
rate by other courts and typically charges a rate of $300 per
hour for wage and hour cases.  (Hutchins Decl. ¶¶ 6-7.)
Tomlinson's declaration indicates that she typically charges a

1  rate of $95 per hour for her paralegal work and that she has

2  assisted attorneys in lawsuits in both federal and state courts

3  in California since 2005.  (Tomlinson Decl. ¶¶ 3-5.)

4          Class counsel have sufficiently shown that their rates

5  were reasonable.  As previously indicated, class counsel has

6  extensive experience with wage and hour class action litigation.

7  Counsel also charges a $300 per hour attorney rate and $95 per

8  hour paralegal rate for non-contingency fee cases, and many

9  clients have agreed to pay these rates.  That clients were

10  willing to pay Tracy, Hutchins, and Tomlinson's hourly rates is a

11  strong indication that their rates are reasonable for wage and

12  hour cases in this market.  See Tire Kingdom, Inc. v. Morgan Tire

13  & Auto, Inc., 253 F.3d 1332, 1337 (11th Cir. 2001).  In light of

14  the findings of other courts, the briefs, and the declarations

15  submitted, the court finds that an hourly rate of $300 per hour

16  is appropriate for similar work performed by similar attorneys of

17  Tracy and Hutchins's caliber and paralegals of Tomlinson's

18  caliber in the Sacramento area.

19          Plaintiff's counsel also submitted itemized billing

20  statements for the court's review.  (See Tracy Decl. Ex. 1;

21  Hutchins Decl. Ex. 1; Tomlinson Decl. Ex. 1.)  Class counsel

22  expended over 280 attorney-hours in developing this case, which

23  included conducting discovery, attending depositions and

24  mediation, and interviewing class members.  After reviewing the

25  billing statements provided by Tracy, Hutchins, and Tomlinson,

26  the court finds that the hours expended on this case were

27  reasonable.  Accordingly, the initial lodestar for class

28  counsel's attorneys' fees is $89,041.00.

1    After calculating the lodestar, the court must decide
2 whether to enhance or reduce the award in the light of particular
3 factors, including the novelty and difficulty of the case, the
4 skill displayed in presenting them, the extent the litigation
5 precluded other employment by the attorneys, and the contingent
6 nature of the fee award.  Ketchum, 24 Cal. 4th at 1132.  However,
7 "[t]here is no hard-and-fast rule limiting the factors that may
8 justify an exercise of judicial discretion to increase or
9 decrease a lodestar calculation."  Thayer v. Wells Fargo Bank,
10 N.A., 92 Cal. App. 4th 819, 834 (2001).

11    Class counsel requests a multiplier of approximately
12 1.5 to be added to the lodestar so that total attorney's fees
13 come to $132,602.00.  (Mot. Attorneys' Fees at 3.)  This case
14 contained multiple novel legal issues, including whether a
15 payment of cash in lieu of health benefits needs to be included
16 in the calculation of overtime under the FLSA.  To the court's
17 knowledge, this issue, which is at the heart of plaintiff's case,
18 remains an open legal question.  Class counsel also displayed
19 skill in litigating this case, receiving a settlement amount that
20 paid class members in a manner commensurate to their injuries.
21 Finally, the contingent nature of this case also weights in favor
22 of enhancement of the lodestar.  Fee enhancements in contingency
23 cases exists to compensate for the risk of loss inherent in such
24 cases and create financial incentives for attorneys to take cases
25 to protect important rights and goals, such as fair labor
26 standards, in addition to fee-for-services cases.  See Ketchum 24
27 Cal. 4th at 1132-33; Beasley v. Wells Fargo Bank, 235 Cal. App.
28 3d 1407, 1419 (1991).  Because all of these factors weigh in

1  favor of enhancing the lodestar, the court will grant counsel's

2  request for a fee enhancement and award a total of $132,602.00 in

3  attorneys' fees.

4      E.   Costs

5          As previously noted, class counsel is entitled to cover

6  for their reasonable costs under the FLSA.  See 29 U.S.C. §

7  216(b).  Class counsel has submitted an itemized list of costs

8  relating to mediation fees, travel expenses, transcript requests,

9  filing fees, and courier services.  (Tracy Decl. Ex. 2.)  These

10 expenses total $ 7,397.54.  (Id.)  The court finds that these are

11 reasonable litigation expenses, and it will therefore grant class

12 counsel's request for compensation for costs.

13     F.   Enhancement Payment to Named Plaintiff

14          The settlement proposes a $10,000.00 "enhancement

15 payment" to the named plaintiff.  The court recognizes that "a

16 class representative is entitled to some compensation for the

17 expense he or she incurred on behalf of the class lest

18 individuals find insufficient inducement to lend their names and

19 services to the class action."  In re Oracle Secs. Litig., No.

20 90-0931, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) (citing

21 In re Continental Ill. Secs. Litig., 962 F.2d 566, 571 (7th Cir.

22 1992)).  "Such payments, however, must be reasonable in light of

23 applicable circumstances, and not 'unfair' to other class

24 members."  Smith v. Tower Loan of Miss., Inc., 216 F.R.D. 338,

25 368 (S.D. Miss.2003) (citation omitted); see also In re Oracle

26 Secs. Litig., 1994 WL 502054 at *1 (reducing requested payment of

27 $2,500 to $500 for spending "between two and five hours

28 undergoing depositions and . . . respond[ing] to a few narrow

24

1  document discovery requests").

2       The proposed payment is not particularly unfair to
3  other class members, given that it will not reduce the amount of
4  settlement funds available to the rest of the class because the
5  award will be made as a separate payment by defendant.  In
6  addition, none of the class members have objected to the amount
7  of additional compensation sought by the named plaintiff.  Class
8  counsel also contends that the named plaintiff attended an all-
9  day deposition, worked extensively with class counsel to review
10 documents in the case upwards of fifteen hours, and attended over
11 nine hours of mediation.  (Mot. Final Class Certification at 6.)
12 Accordingly, the court finds the 10,000.00 enhancement payment to
13 the named plaintiff is reasonable.

14 III. <u>Conclusion</u>

15      Based on the foregoing, the court grants final
16 certification of the settlement class and approves the settlement
17 set forth in the Settlement Agreement as fair, reasonable, and
18 adequate.  The court finds an award of $150,000.00 to be an
19 appropriate amount for attorneys' fees, costs, and plaintiff's
20 enhancement payment.  Consummation of the settlement in
21 accordance with the terms and provisions of the Settlement
22 Agreement is therefore approved, and the definitions provided in
23 the Settlement Agreement shall apply to the terms used herein.
24 The Settlement Agreement shall be binding upon all members of the
25 class action who did not timely elect to be excluded and all
26 members of the collective action who chose to opt-in.

27      IT IS THEREFORE ORDERED that plaintiff's motion for
28 final approval of the class and collective action settlement be,

1  and the same hereby is, GRANTED.

2          IT IS FURTHER ORDERED that:

3          (1)  solely for the purpose of this settlement, and

4  pursuant to Federal Rule of Civil Procedure 23 and FLSA § 216(b),

5  the court hereby certifies the following class: All Hiring Hall

6  Meter Readers employed by Pacific Gas and Electric Company from

7  August 18, 2006 through December 31, 2009, inclusive.  Specially,

8  the court finds that:

9              (a) the settlement class members are so numerous

10  that joinder of all settlement class members would be

11  impracticable;

12             (b) there are questions of law and fact common to

13  the settlement class which predominate over any individual

14  questions;

15             (c) claims of the named plaintiff are typical of

16  the claims of the settlement class;

17             (d) the named plaintiff and class counsel have

18  fairly and adequately represented and protected the interests of

19  the settlement class; and

20             (e) a class action is superior to other available

21  methods for the fair and efficient adjudication of the

22  controversy;

23          (2) the court appoints the named plaintiff, Manuel

24  Murillo, as representative of the class and finds that he meets

25  the requirements of Rule 23 and § 216(b);

26          (3) the court appoints the following lawyers as counsel

27  to the settlment class, and finds that counsel meets the

28  requirements of Rule 23 and § 216(b):

Michael Tracy
Meghan Ross Hutchins
Law Offices of Michael Tracy
2030 Main Street, Suite 1300
Irvine, CA 92614
Telephone: (949) 260-9171
Facsimilie: (866) 365-3051

(4) the settlement agreement's plan for class notice is the best notice practicable under the circumstances and satisfies the requirements of due process, Rule 23, and § 216(b).  The plan is approved and adopted.  The Notice of Class and Collective Action Settlement complies with Rule 23(c)(2), Rule 23(e), and § 216(b) and is approved and adopted;

(5) the parties have executed the notice plan in the court's Preliminary Approval Order, in response to which 358 collective action class members submitted an Opt-In/Consent to Join form, and 25 putative class members submitted an Opt-out form.  Having found that the parties and their counsel took extensive efforts to locate and inform all putative class members of the settlement, and given that no class members (or opt-outs) have filed any objections to the settlement, and having found that the number of individuals who opted in and opted out, respectively, to be reasonable, the court finds and orders that no additional notice to the class is necessary;

(6) as of the date of the entry of this Order, plaintiff and all class members hereby do and shall be deemed to have fully, finally, and forever released, settled, compromised, relinquished, and discharged any and all of the Released Parties (as defined by paragraph 29 of the Settlement Agreement) of and from any and all Settled Claims (as that term is defined in paragraph 74 of the Settlement Agreement).  The claims released

27

by plaintiff and class members include, but are not limited to, claims for damages, penalties, attorneys' fees or costs arising from or dependent on the Fair Labor Standards Act, the California Civil Code, the California Labor Code, the wage orders of the California Industrial Welfare Commission, California Business and Professions Code section 17200 *et seq.*, California Labor Code section 2698 *et seq.*, and the California common law of tort and contract;

(7) the distribution of settlement payments shall occur not later than thirty (30) days after the Effective Date (as that term is defined in paragraph 74 of the Settlement Agreement). Defendant shall effect the distribution of settlement payments by placing in the mail via check or via direct deposit into class members' bank accounts, the settlement payments for all collective action class members pursuant to the Settlement Agreement.  No person shall have any claim against defendant, class counsel, defendant's counsel or any other agent designated by plaintiff or defendant based upon the distribution of settlement payments made substantially in accordance with the Settlement Agreement or further Orders of the court;

(8) class counsel is entitled to fees and costs in the amount of $140,000.00;

(9) the named plaintiff is entitled to an enhancement award in the amount of $10,000.00;

(10) the distribution of class counsel's fees and costs and the enhancement award shall occur no later than fifteen (15) calendar days after the Effective Date (as that term is defined in paragraph 74 of the Settlement Agreement);

1    (11) Upon the distribution of settlement payments,

2  attorneys' fees and costs, and the enhancement payment,

3  defendant, the Released Parties, and defendant's counsel shall

4  have no further liability or responsibility to class counsel,

5  plaintiff, or any other class member; and

6    (12) the action is dismissed with prejudice; however,

7  without affecting the finality of this Order, the court shall

8  retain continuing jurisdiction over the interpretation,

9  implementation, and enforcement of the Settlement Agreement with

10 respect to all parties to this action, and their counsel of

11 record.

12    LET JUDGMENT BE ENTERED ACCORDINGLY.

13 DATED:  July 20, 2010

14

15  _____

16  WILLIAM B. SHUBB

17  UNITED STATES DISTRICT JUDGE